Richard Lee **BALDWIN**, Petitioner-Appellee,

v.

Andrew **LEWIS**, Acting Superintendent of Milwaukee County Detention Home, Respondent-Appellant.

No. 17868.

United States Court of Appeals, Seventh Circuit.

April 22, 1971.

Robert W. Warren, Atty. Gen., William A. Platz, Asst. Atty. Gen., Madison, Wis., E. Michael McCann, Dist. Atty., Milwaukee County, Bruce C. O'Neill, Jon Peter Genrich, Asst. Dist. Attys., Milwaukee, Wis., for respondent-appellant.

Robert H. Friebert, Milwaukee, Wis., for petitioner-appellee.

Before MAJOR, Senior Circuit Judge, and CUMMINGS and PELL, Circuit Judges.

PELL, Circuit Judge.

This is an appeal from an order of the district court releasing, on a writ of habeas corpus, the petitioner, then age 17, to the custody of his mother pending further disposition of delinquency proceedings in the Milwaukee County Children's Court. The petitioner had been in the custody of the respondent at the Milwaukee County Detention Home.

The factual background of the case here involved is set forth correctly and in detail in the district court's opinion. Baldwin v. Lewis, 300 F.Supp. 220 (E.D. Wis.1969). We can conceive no purpose being served by repeating the detailed factual situation here and note only facts bearing significantly on the decision we have reached.

The petitioner was taken into custody as an alleged delinquent child by Milwaukee detectives on April 22, 1969, without a warrant, for allegedly setting a fire in a Milwaukee high school on March 27, 1969. The record indicates that the police officers were acting upon information furnished by two high school teachers and one of petitioner's fellow classmates who was involved in the incident The petitioner appeared the next day before one James, who was a non-judicial juvenile officer, designated by the Children's Court of Milwaukee County to determine detention matters. Petitioner was ordered held in detention without bail. The petitioner appeared before a juvenile judge on April 25, 1969 and his detention without bail was continued.

A writ of habeas corpus was obtained from the Circuit Court of Milwaukee County on April 26, 1969. Hearings were held before a circuit judge in Milwaukee County on April 28 and 29, 1969. The circuit judge found that the detention hearing had been improperly conducted by the juvenile judge. The circuit judge then conducted a de novo detention hearing and concluded that the petitioner should be held in detention without bail.

On May 2, 1969, the petitioner requested the Wisconsin Supreme Court to grant him leave to commence an original action for a writ of habeas corpus. This petition was received and filed in the Wisconsin Supreme Court on May 5, 1969. The Clerk of the Supreme Court of the State of Wisconsin sent the following communication, printed on a post card, to counsel for the petitioner:

"I have received and submitted to the Court your petition for habeas corpus.

"The Court has a large volume of such matters, which are handled in addition to the normal calendar cases. I cannot, therefore, predict when the Court will announce the decision in your matter. I will notify you immediately when such an announcement is made."

This card was received by petitioner's counsel on May 6, 1969, and on the same day petitioner's counsel commenced this action in the District Court for the Eastern District of Wisconsin. On May 9, 1969, the district court ordered a response from the respondent. A return dated May 10, 1969, was filed by the respondent on May 12, 1969. A hearing was held in the district court on May 13, 1969. On May 14, 1969, the district court ordered the discharge of the petitioner from the custody of the respondent pending further disposition of his case in the Children's Court for the reason that the "petitioner is being held in custody in violation of his rights under the United States Constitution."

On May 23, 1969, the Chief Justice of the Wisconsin Supreme Court wrote a letter to the district judge, reading as follows:

"I have heard that you have issued an order to show cause why habeas corpus should not be granted releasing the above named juvenile from detention and that your court has freed him for such detention until your court has decided the matter. Is this correct? On May 5, 1969, Baldwin filed with

the Wisconsin Supreme Court a request to commence an original action for the issuance of a similar writ. His request is being considered."

Under date of May 28, 1969, the district judge wrote the Chief Justice of the Wisconsin Supreme Court confirming that the order had been entered discharging petitioner from custody and returning custody to the petitioner's mother pending further disposition of the matter in the Children's Court. The letter also advised that an opinion was in the process of preparation and that a copy would be forwarded when it was completed.

The opinion of the district court rendered on June 24, 1969, held that there had been probable cause for petitioner's being taken into custody and that he did not have a right to bail but discharged the petitioner from custody, holding that in order to satisfy the constitutional requirement of due process, detention hearings held pursuant to the Wisconsin statute must include a determination as to whether there was probable cause to believe (1) that an act had been committed which if committed by an adult would be a crime and (2) that the juvenile in custody has in fact committed such act. The court then was of the opinion that the detention hearings were deficient to meet the constitutional requirement.

A number of points of constitutional law are urged on this appeal. The appellee-petitioner, although not cross-appealing, urges that the district court's opinion did not go far enough, generally contending that the same constitutional guarantees should be applicable to a juvenile as would be to an adult charged with a crime which was the basis of the juvenile delinquency charge. On the other hand, the respondent strenuously contends that the order and opinion entered revolutionize juvenile procedure in the State of Wisconsin. We do not reach any of these points, interesting and pertinent though they may be to present day constitutional conceptualism. We find ourselves unable to cross the threshold of the requirement of exhaustion of state remedies.

The doctrine of requirement of exhaustion of state remedies by the person claiming unconstitutional deprivation of liberty by virtue of state processes is not a new one in our federal procedure.

Over and above policy factors, which caused the doctrine originally to come into being, the host of habeas corpus petitions now being presented to the federal courts would seem to suggest insistence upon strict adherence to the doctrine.[1] We do not here, however, find it necessary to go beyond established guideposts in the application of the doctrine.

An early discussion of the matter here involved is found in Ex parte Royall, 117 U.S. 241, 251, 6 S.Ct. 734, 740, 29 L.Ed. 868 (1886). The Supreme Court there was of the opinion that the federal court has the power to do so, and may discharge the accused in advance of his trial if he is restrained of his liberty in violation of the national constitution. * * " The Court further, however, held that the court was not bound in every case to exercise such a power immediately upon application being made for the writ. The Supreme Court, referring to the discretion in the matter vested in the federal courts, stated that such discretion "should be exercised in the light of the relations existing, under our system of government between the judicial tribunals of the Union and of the States, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution." *Id.*

---

1. For the fiscal year ending June 30, 1970 the total of all types of cases filed in the United States Court of Appeals was 9,661. Of these, 1,319 were state habeas corpus proceedings and there were 303 other prisoner petitions. There were also 225 federal habeas corpus proceedings and 84 other prisoner petitions. Annual Report of The Director, Administrative Office of the United States Courts, Table B-7 (1970).

This recognition of the importance of comity has a concomitant appreciation of the fact that the federal courts are not the only guardians of rights and privileges guaranteed by our United States Constitution. Thus, the Supreme Court in *Royall* stated at p. 252, 6 S.Ct. at p. 740 that the federal court "was not at liberty, under the circumstances disclosed, to presume that the decision of the state court would be otherwise than is required by the fudamental law of the land, or that it would disregard the settled principles of constitutional law announced by this court, upon which is clearly conferred the power to decide ultimately and finally all cases arising under the constitution and laws of the United States."

The first Mr. Justice Harlan, the author of the opinion, then quoted with approval from the earlier case Covell v. Heyman, 111 U.S. 176, 182, 4 S.Ct. 355, 358, 28 L.Ed. 390 (1884), as follows:

> "[T]he forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity, with perhaps no higher sanction than the utility which comes from concord; but between state courts and those of the United States, it is something more. It is a principle of right and of law, and, therefore, of necessity."

The fashioning of a doctrine of abstention, "whereby full play would be allowed the States in the administration of their criminal justice without prejudice to federal rights enwoven in the state proceedings" is traced in Fay v. Noia, 372 U.S. 391, 415 et seq., 83 S.Ct. 822, 836, 9 L.Ed.2d 837 (1963).

See also Ex parte Hawk, 321 U.S. 114, 117, 64 S.Ct. 448, 450, 88 L.Ed. 572 (1944), where the Supreme Court in a *per curiam* decision also enunciated the principle that the federal courts "will interfere with the administration of justice in the state courts only 'in rare cases where exceptional circumstances of peculiar urgency are shown to exist.'"

The exhaustion rule has been codified with regard to persons in custody pursuant to the judgment of the state court in 28 U.S.C. § 2254(b) and (c).

■ Petitioner contends that 28 U.S.C. § 2254 is applicable only to post conviction proceedings. This, of course, is true by the terms of the statute in question. However, 28 U.S.C. § 2254 merely codified one phase of a rule based upon the principles of comity which is more deeply channeled than this one codification. The general principle, as we have hereinbefore demonstrated, substantially predates the statute to which we have here referred. In other situations, also, the recognition of the states having the first opportunity to determine matters primarily in the state jurisdiction has been recognized. Thus, in Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 286, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970), the Court in connection with 28 U.S.C. § 2283 stated the following rationale:

> "Thus from the beginning we have had in this country two essentially separate legal systems. Each system proceeds independently of the other with ultimate review in this Court of the federal questions raised in either system. Understandably this dual court system was bound to lead us to conflicts and frictions. Litigants who foresaw the possibility of more favorable treatment in one or the other system would predictably hasten to invoke the powers of whichever court it was believed would present the best chance of success. Obviously this dual system could not function if state and federal courts were free to fight each other for control of a particular case."

■ The exhaustion rule is not one delimiting the power of the court but rather one which relates to the appropriate exercise of the recognized power. Fay v. Noia, *supra*, 372 U.S. at 420, 83 S.Ct. 822.

In the case before us it would seem that the ink was scarcely dry on the postmark of the post card of the Clerk of the Wisconsin Supreme Court before the knock was administered to the federal court door. Without purporting to determine here what period of time should be necessary to persuade a federal district court that inordinate delay in the adjudication of an asserted post conviction remedy might itself work a denial of due process cognizable in the federal court, *see* Smith v. Kansas, 356 F.2d 654, 656 (10th Cir. 1966), cert. den. 389 U.S. 871, 88 S.Ct. 154, 19 L.Ed.2d 151 (1967), we cannot conceive that a one day lapse of time can achieve the status of inordinate delay. Likewise, we cannot agree with petitioner that the form card sent by the Clerk of the Supreme Court was a prediction that excessive delay would result. The very multitude of these petitions besetting courts requires some such acknowledgment procedure.

We are not here setting down the necessarily applicable time standard. Each case has to be judged on its own factual situation. Thus, in United States ex rel. Brabham v. Rundle, 282 F.Supp. 105 (E.D.Pa.1968), in the case of a convicted prisoner the court held two months not to be "inordinate delay." An entirely different factual situation would appear to be involved in the case of a minor at the stage of original detention. We only here, as indicated above, find insufficient for relief one day with no clear evidence that excessive delay would thereafter occur.

Where the district court has reason to believe that impairment of constitutional rights may unduly occur by delay, it might seem preferable rather than denying the petition to follow the procedure outlined by the Supreme Court in In Re Shuttlesworth, 369 U.S. 35, 82 S.Ct. 551, 7 L.Ed.2d 548 (1962), in which a period of time was specified; and if state relief had not been secured within the specified time the district court could then consider all state remedies exhausted and proceed to determine the matter. The only communication from the district court directly or indirectly to the Wisconsin Supreme Court here was in response to the letter of inquiry from the Chief Justice of the Wisconsin Supreme Court. While the letter from the Supreme Court was diplomatically couched, it is not at all difficult to read therein at least some indicia of incredulity that the matter was being passed upon in the federal court and that the petitioner had been released while the matter was under consideration by the Supreme Court of Wisconsin. This incipient conflict is the very situation that the doctrine of exhaustion founded on comity was designed to avoid.[2]

The teaching of In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), is that the safeguards of due process are available to a minor involved in state juvenile court proceedings. However, we do not find that *Gault* has other application here as state habeas corpus proceedings had been exhausted there.

Before the district court, the respondent contended that if the petitioner remained in detention he would have had a speedy trial—in no more than three to four weeks. While this is a minimal pe-

---

2. In a recent article in the American Bar Association Journal a former Assistant Attorney General of the United States stated the following:

"There is perhaps no single attribute of federal judicial power more abrasive of the relations of the states and the Federal Government than the over-expansion of the great writ of habeas corpus by the federal courts as applied to state prisoners. State judges who do not bitterly resent the new concept of habeas corpus jurisdiction of the federal district courts are few."

We are pleased to note, however, the author's opinion that while the expansion of federal judicial power in this situation creates friction, "[n]o valid criticism may be made of the patient handling of habeas corpus petitions by the federal district courts. Those judges have exercised admirable restraint in their almost daily and routine task of dealing with petitions from state prisoners." George Cochran Doub, The Case Against Modern Federal Habeas Corpus, 57 A.B.A.J. 323, 326, 327 (April 1971).

riod which presumably is consistent with the nature of juvenile delinquency proceedings, nevertheless the deprivation of liberty is not to be viewed lightly. This, of course, is true not only of the juvenile but also of the state prisoner whose conviction has been brought about by violation of his constitutional rights. More appropriate here is the fact that the petitioner had two routes open to him. He could have appealed to the Wisconsin Supreme Court to review the circuit court's order pursuant to Sec. 274.05, Wis.Stats., or he could have prosecuted a writ of habeas corpus, as he started to do, in the Wisconsin Supreme Court pursuant to Chap. 292, Wis.Stats.

With regard to the Wisconsin law on the subject at the time of the incident in question,[3] it has been stated:

> "Habeas corpus in the Supreme Court [of Wisconsin] is the most commonly used and most adequate remedy * * * for claims alleging that the conviction rests upon a violation of fundamental rights under either the state or the federal constitution. The writ may be used at any time to challenge lack of jurisdiction or deprivation of fundamental constitutional rights which can only be established by proof outside the record." Fairchild, Post Conviction Rights and Remedies in Wisconsin, 1965 Wis.L.Rev. 52, 57.

We have no reason for believing that the Wisconsin Supreme Court in the appropriate case would not, as other courts do, entertain emergency motions. We further cannot say that whereas in the present situation there is no provision for bail as there would be in the case of an adult alleged criminal, proper facts do not exist for emergency consideration by the state court.

In connection with the willingness of the Wisconsin Supreme Court to deal promptly with matters of this sort, we note in State ex rel. Groppi v. Leslie, 44 Wis.2d 282, 171 N.W.2d 192 (1969), that the petitioner applied to the Supreme Court of Wisconsin on October 7, 1969 for that court to take original jurisdiction to consider his petition for writ of habeas corpus. The court accepted original jurisdiction two days later and heard oral arguments on the merits on October 10, 1969. Since the petitioner, Groppi, was released the following day by a federal district court, the matter apparently was less pressing but nevertheless the Wisconsin Supreme Court handed down its decision on October 17, 1969.

In the case before us petitioner contends that the issue with respect to exhaustion should not be entertained by this court since it was not raised in the district court.

In the petition directed to the federal district court the petitioner had alleged the following:

> "That your petitioner had reason to believe and does believe that he has either exhausted the remedies available to him in the courts of the State of Wisconsin, or that there is no available State corrective process, or that there are circumstances which exist which render the State corrective process ineffective to protect the rights of the petitioner."

On the face of it, this allegation scarcely seems to allege any real exhaustion of state remedies, being worded in the alternative and based upon belief rather than fact.

In Thompson v. Overlade, 216 F.2d 492, 493 (7th Cir. 1954), this court stated the following applicable principle:

> "The burden is upon petitioner in such a situation to affirmatively set forth in his petition for habeas corpus what remedies he pursued in the state court and a justification, if any exists, for his failure to pursue any other state court remedy. The burden is not

---

3. We note that since the time petitioner was before the Wisconsin court, Wisconsin has enacted a new post-conviction procedure statute, Sec. 974.06, Wis.Stat., which supplants the habeas corpus remedy in many situations. However, habeas apparently remains the appropriate remedy in the pre-trial detention situation.

upon the respondent to point out the state court remedies of which petitioner failed to avail himself."

While it does not appear that the respondent did urge the matter before the district court, we note that the district court in its opinion stated the following:

"As there was no way for petitioner or his counsel to tell when or even if the Wisconsin Supreme Court would act on this petition, I find that under the circumstances the State corrective process was ineffective to protect the rights of petitioner as required by 28 U.S.C. § 2254. Consequently, the matters presented to this court in the petition for writ of habeas corpus are ready for decision." Baldwin v. Lewis, 300 F.Supp. 1220, 1229 (E.D.Wis. 1969).

This burden was on the petitioner of proving compliance with the exhaustion requirement. United States ex rel. Cuomo v. Fay, 257 F.2d 438, 442 (2d Cir. 1958), cert. den. 358 U.S. 935, 79 S.Ct. 325, 3 L.Ed.2d 307 (1959). The petitioner having failed to sustain the burden of proof and the matter obviously being a specified starting point for the district court's opinion, we find this contention of the petitioner without merit.

Inasmuch as the finding of the court was based upon no apparent foundation, we find that the district court has exceeded the discretionary latitude permissible in the particular type of situation here involved.

We likewise find no merit in the other contentions of the petitioner directed to this issue. We do not quarrel with the assertion that the exhaustion doctrine is not jurisdictional in the technical sense of that term [4] nor do we deny jurisdiction to the district court. Our opinion rather is that the jurisdiction should not here have been exercised, at least without affording some reasonable

time limitation to the Wisconsin Supreme Court to make the primary determination at the state level. The contention that there was no indication of the Wisconsin Supreme Court that they would rule on Baldwin's petition in an expeditious manner begs the question. There was no contrary indication and the post card acknowledgment is too slender a reed upon which to fix such a determination.

Finally, petitioner urges that if the district court had not acted promptly the federal issue might have become moot due to the trial of the petitioner. While petitioner's counsel apparently evinces more interest in a determination of the federal constitutional question than in having his client's ultimate juvenile delinquency status determined promptly, we do note that in State ex rel. Groppi v. Leslie, *supra*, 44 Wis.2d 282, 171 N.W.2d 192, the Wisconsin Supreme Court did not consider that the issue had become moot by the petitioner there being released on bail by the federal district court. In any event, this is apparently a case where the petitioner by his counsel prefers the federal forum to that of the state and made only a token gesture toward exhausting state procedure. The same diligence applied to the proceedings before the Wisconsin Supreme Court, which admittedly would not have been as easy geographically, might well have produced the expedition of which petitioner professes to be so desirous. We have no reason for thinking otherwise. The test was not made.

Finding no special circumstances in the case before us justifying a deviation from the well established exhaustion doctrine, *cf.* Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952), for the reasons hereinbefore set out this cause is reversed and remanded to the district court for further proceedings not inconsistent herewith.

Reversed and remanded.

---

4. Brown v. Fogel, 387 F.2d 692, 695 (4th Cir. 1967), cert. den. 390 U.S. 1045, 88 S.Ct. 1647, 20 L.Ed.2d 307 (1968); Ful-

wood v. Stone, 129 U.S.App.D.C. 314, 394 F.2d 939, 942, n. 8 (1967).