[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 21, 2003
THOMAS K. KAHN
CLERK

————————————————

No. 02-12136

————————————————

D. C. Docket No. 01-01142-CV-J-21-HTS

DAVID M. WINCK, JR.,

Petitioner-Appellee,

versus

GORDON R. ENGLAND, Honorable,
JULIAN E. SALLAS, Lieutenant,
RICHARD G. HOFFMAN, Captain,
JOHN ASHCROFT,
MAC CAULEY,

Respondents-Appellants.

———————————————

Appeal from the United States District Court
for the Middle District of Florida

———————————————

**(April 21, 2003)**

Before ANDERSON, BIRCH and BARKETT, Circuit Judges.

BIRCH, Circuit Judge:

This appeal presents the question whether a military service member must exhaust all intraservice administrative remedies before applying for a writ of habeas corpus seeking discharge from the military under the terms of his or her enlistment contract. The district court granted relief and ordered the service member discharged from the military after construing the contract in his favor. Because Winck has not exhausted his intraservice military remedies, we REVERSE and REMAND with instructions to dismiss the petitioner's application without prejudice.

## I. BACKGROUND

The petitioner, David M. Winck, Jr., enlisted in the Navy under the exceptional student provisions of the Nuclear Propulsion Officer Candidate ("NUPOC") program, executing the NUPOC Service Agreement ("enlistment contract") on 18 June 1999. He was then ordered to active duty while he completed his final year of college. In December 1999, while still in college, Winck signed an "Addendum Page for Service Agreements." In the Addendum, he acknowledged that Officer Candidate School ("OCS") was "a physically and mentally challenging program," and agreed that "[i]f entering the program from

2

civilian life . . . [, i]n the event . . . [he] request[ed] disenrollment prior to acceptance of a commission, [he would] be discharged from the Naval Service," but, "[i]f entering the program from an enlisted status . . . [he would] be obligated to serve the terms of the previous enlistment contract." R1-1, Ex. A at 10. In this case, those terms "required [him] to serve two years on active duty in an enlisted status if disenrolled from the NUPOC Program for any reason other than physical." Id., Ex. A at 2.

In May 2000, Winck received orders to report to OCS. After reporting, he signed an "Administrative Remarks" form with essentially the same language as the Addendum regarding disenrollment, with the exception that entering the program from enlisted status expressly included special programs such as NUPOC. The following month, Winck voluntarily disenrolled from OCS and requested discharge from the Navy under the terms of his enlistment contract. The Navy advised him, however, that he must serve out the two-year enlisted term required by the original Service Agreement, and subsequently assigned him to the U.S.S. Hue City, a guided missile cruiser to be deployed in January 2002 for extended operations in the Persian Gulf. Winck then filed this habeas petition, arguing that the term "program" in the Addendum referred to NUPOC and not OCS, and that since he entered NUPOC from civilian life, he was entitled to discharge. Because

3

the Navy did not raise exhaustion as an issue, the district court assumed, without so finding, that Winck had exhausted all available intramilitary remedies, and granted the petition on its merits after construing the contract in Winck's favor.

## II. DISCUSSION

A. <u>Waiver of the Exhaustion Doctrine</u>

On appeal, the Navy raises exhaustion for the first time, arguing that Winck had first sought relief neither from the Board for Correction of Naval Records ("BCNR"), created pursuant to 10 U.S.C. § 1552 "with broad remedial authority to correct any error or remove any injustice identified by a service member" upon approval by the Secretary of the Navy, Appellant's Br. at 16, or from his superior officer pursuant to Article 138 of the Uniform Code of Military Justice, 10 U.S.C. § 938. Winck urges us, however, to deem the issue waived because the Navy failed to raise it below both in its response to the habeas petition and in its motion to reconsider. The Navy responds that "exhaustion in the special military context is in the nature of a jurisdictional requirement," and, therefore, may be raised at any time. Appellant's Br. at 12. As a threshold issue, we determine whether exhaustion in this context is jurisdictional and, therefore, incumbant upon us to consider.

4

It is true, as the Navy points out, that our opinion in <u>Hodges v. Callaway</u>, 499 F.2d 417, 419 & n.5 (5th Cir. 1974), raised exhaustion <u>sua sponte</u>, referring to it as a "jurisdictional problem." However, "[w]hat we really determine is a judicial policy akin to comity," <u>Mindes v. Seaman</u>, 453 F.2d 197, 199 (5th Cir. 1971), that is, a "judicial abstention doctrine." <u>Meister v. Tex. Adjutant Gen. Dep't</u>, 233 F.3d 332, 339 (5th Cir. 2000), <u>cert. denied</u>, 532 U.S. 1052, 121 S. Ct. 2194 (2001). As such, "we view the requirement of exhaustion as . . . based on principles of comity and not as an imperative limitation of the scope of federal habeas corpus power." <u>In re Kelly</u>, 401 F.2d 211, 213 (5th Cir. 1968) (per curiam).

In fact, we have consistently distinguished our subject-matter jurisdiction from these prudential considerations. For example, while we have squarely held that courts have jurisdiction over "applications for habeas corpus brought by persons in confinement by the military," <u>United States ex rel. Berry v. Commanding General</u>, 411 F.2d 822, 824 (5th Cir. 1969), "[b]efore entertaining [such] an application . . . , we have required, on principles of comity, the exhaustion of the procedures of the military justice system." <u>Id.</u> Similarly, "'judicial concern over inappropriate intrusion' into military matters . . . has led [us] to decline review" of those matters, though we "generally have jurisdiction." <u>Rucker v. Sec'y of the Army</u>, 702 F.2d 966, 969 (11th Cir. 1983) (citation

5

omitted); see also Woodard v. Marsh, 658 F.2d 989, 992 (5th Cir. Unit A Sept. 1981) ("[A] federal district court should not review every such decision, even if it has subject matter jurisdiction.").

The Supreme Court has espoused a similar distinction. Because civilian courts have jurisdiction "to review the judgment of a court-martial in a habeas corpus proceeding," the Court's "initial concern is not whether the District Court has any power at all to consider [those habeas] applications[, but] rather . . . the manner in which the Court should proceed to exercise its power." Burns v. Wilson, 346 U.S. 137, 139, 73 S. Ct. 1045, 1047 (1953). Again in Schlesinger v. Councilman, 420 U.S. 738, 95 S. Ct. 1300 (1975), having already established that subject-matter jurisdiction existed for the district court to permanently enjoin impending court-martial proceedings against an Army captain, id. at 739-40, 95 S. Ct. at 1304, the Court concluded that a "question of equitable jurisdiction [remained], a question concerned, not with whether [a] claim falls within the limited jurisdiction conferred on the federal courts, but with whether consistently with the principles governing equitable relief the court may exercise its remedial powers." Id. at 754, 95 S. Ct. at 1311.

We have also expressly concluded that exhaustion "is not a *jurisdictional* bar to habeas relief" when seeking release from state custody pursuant to 28 U.S.C. §

6

2254.  Esslinger v. Davis, 44 F.3d 1515, 1524 n.33 (11th Cir. 1995).[1]  Our consideration whether judicial review is appropriate in the military context is animated by the same principles of comity arising in the § 2254 setting.  See discussion infra note 3.  For this reason, we apply an abuse of discretion standard in reviewing a district court's refusal, for lack of exhaustion, to take jurisdiction of a habeas petition brought by a member of the armed forces convicted by special court-martial.  See Doyle v. Koelbl, 434 F.2d 1014, 1015 (5th Cir. 1970) (per curiam).[2]

---

[1]  By contrast, "[e]xhaustion of administrative remedies is jurisdictional," when a petition for writ of habeas corpus is brought pursuant to 28 U.S.C. § 2241 for release from a federal prison. Gonzalez v. United States, 959 F.2d 211, 212 (11th Cir. 1992) (per curiam).  Also jurisdictional is "[t]he general rule . . . that a challenge to agency actions in the courts must occur after available administrative remedies have been pursued." Boz v. United States, 248 F.3d 1299, 1300 (11th Cir. 2001) (per curiam) (internal quotation marks and citation omitted); see also United States v. Lucas, 898 F.2d 1554, 1556  (11th Cir. 1990) (per curiam) (action filed pursuant to 18 U.S.C. § 3568 for credit against prisoner's sentence for time spent in custody).

[2]  To be clear, we do not suggest, as Winck appears to, that a court may always exercise its discretion in deciding whether to require exhaustion, even where we have previously determined that exhaustion is necessary:

> [T]he decision whether to require exhaustion is not discretionary in the sense that it can be made solely on the basis of the equities in any given case without regard to authoritative precedent.  Rather, judicially-developed exhaustion requirements are "common law" rules in that the decisions of appellate courts on this issue will govern the subsequent decisions of the lower courts [and other appellate court panels] to which they properly apply.

Montgomery v. Rumsfeld, 572 F.2d 250, 254 n.4 (9th Cir. 1978).  However, where we have not developed such rules, the outcome of a district court's exhaustion analysis is reviewed for abuse of discretion.  See Doyle, 434 F.2d at 1015; Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1556-57 (11th Cir. 1985).

Having found the military exhaustion requirement prudential, and not jurisdictional, Winck now urges us to reject the Navy's allegation that he failed to exhaust intraservice military remedies out-of-hand because it was raised for the first time on appeal. We decline to do so, emphasizing the importance of the doctrines of abstention and exhaustion, as well as their application to the military context. In Schlesinger, for example, the Court sua sponte sought supplemental briefing on "'exhaustion of remedies, and . . . the propriety of a federal district court enjoining a pending court-martial proceeding.'" 420 U.S. at 743-44, 95 S. Ct. at 1306. Similarly, in the context of a habeas petition for release from state custody, the Court held that, while an "appellate court is not required to dismiss for nonexhaustion notwithstanding the State's failure to raise it," neither is it "obligated to regard the State's omission as an absolute waiver of the claim." Granberry v. Greer, 481 U.S. 129, 133, 107 S. Ct. 1671, 1674 (1987). Recognizing that "there are some cases in which it is appropriate for an appellate court to address the merits of a habeas corpus petition notwithstanding the lack of complete exhaustion," id. at 131, 107 S. Ct. at 1674, the Court nevertheless counseled its lower counterparts to "determine whether the interests of comity . . . will be better served by addressing the merits forthwith or by requiring a series of additional . . . proceedings before reviewing the merits of the petitioner's claim." Id. at 134, 107

8

S. Ct. at 1675; see also Esslinger, 44 F.3d at 1524 ("[C]ircumstances may counsel

that [a] district court raise *sua sponte* a procedural bar to relief that the state has

'waived,'" such as the exhaustion requirement in 28 U.S.C. § 2254.).[3]

---

[3] In Gusik v. Schilder, 340 U.S. 128, 71 S. Ct. 149 (1950), the Court "drew an explicit analogy" between the exhaustion requirement for habeas applications by military prisoners and that "for federal habeas attacks on state criminal convictions." Schlesinger, 420 U.S. at 758 n. 32, 95 S. Ct. at 1313 n. 32. "The policy underlying that rule is as pertinent to the collateral attack of military judgments as it is to collateral attack of judgments rendered in state courts." Gusik, 340 U.S. at 131-32, 71 S. Ct. at 151.

> It is true, of course, that the principles of federalism which enlighten the law of federal habeas corpus for state prisoners are not relevant to the problem before us. Nevertheless other considerations require a substantial degree of civilian deference to military tribunals. In reviewing military decisions, we must accommodate the demands of individual rights and the social order in a context which is far removed from those which we encounter in the ordinary run of civilian litigation.

Noyd v. Bond, 395 U.S. 683, 694, 89 S. Ct. 1876, 1883 (1969).

> The military is "a specialized society separate from civilian society" with "laws and traditions of its own (developed) during its long history." Moreover, "it is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise." To prepare for and perform its vital role, the military must insist upon a respect for duty and a discipline without counterpart in civilian life. The laws and traditions governing that discipline have a long history; but they are founded on unique military exigencies as powerful now as in the past.

Schlesinger, 420 U.S. at 757, 95 S. Ct. at 1313 (citations omitted); see also Kawitt v. United States, 842 F.2d 951, 953 (7th Cir. 1988) (applying "the Supreme Court's flexible interpretation of . . . exhaustion" in Granberry to the military setting).
  More generally, we have concluded that, notwithstanding our general refusal to entertain an issue not raised below, we are justified in doing so "'where the proper resolution is beyond any doubt.'" Narey v. Dean, 32 F.3d 1521, 1526-27 (11th Cir. 1994) (citation omitted). In view of the long line of cases precluding judicial review of military claims absent exhaustion, the proper resolution of this issue, as we demonstrate below, is beyond any doubt.

9

Accordingly, our decision whether to mandate exhaustion when raised first on appeal is within our discretion. Here, Winck has at least a "colorable federal claim," one that is not, however, "plainly warranted," two factors that both counsel against a decision on the merits. Granberry, 481 U.S. at 135, 107 S. Ct. at 1675-76. Thus, we will use our discretion to determine whether exhaustion of intraservice military administrative remedies is required before a federal court may review a habeas petition brought by a member of the military seeking discharge under the terms of his or her enlistment contract.

B. The Exhaustion Doctrine as Applied to Military Habeas Petitions

As previously noted, "[t]hat the federal civil courts have jurisdiction of applications for habeas corpus brought by persons in confinement by the military authorities is undoubted." Berry, 411 F.2d at 824; Gusik v. Schilder, 340 U.S. 128, 133 n.3, 71 S. Ct. 149, 152 n.3 (1950). This jurisdiction extends to those involuntarily held while claiming entitlement to discharge under military regulations. See In re Kelly, 401 F.2d at 213. We have also recognized our jurisdiction over a habeas petition seeking cancellation or rescission of the petitioner's enlistment contract, applying "traditional notions of contract law."

Peavy v. Warner, 493 F.2d 748, 749-50 (5th Cir. 1974); see also Ferrell v. Sec'y of Def., 662 F.2d 1179, 1181, 1182 (5th Cir. Dec. 1981).

In Gusik, the Court concluded that "[i]f an available procedure has not been employed to rectify [an] alleged error [in a military judgment] which the federal court is asked to correct, any interference by the federal court may be wholly needless." 340 U.S. at 132, 71 S. Ct. at 151-52. It thereby "established the general rule that habeas corpus petitions from military prisoners should not be entertained by federal civilian courts until all available remedies within the military court system have been invoked in vain." Noyd v. Bond, 395 U.S. 683, 693, 89 S. Ct. 1876, 1882 (1969); see also Berry, 411 F.2d at 824. In Woodrick v. Hungerford, 800 F.2d 1413, 1417 (1986), the Fifth Circuit applied the exhaustion requirement to the type of habeas claim raised here, and held "that where a serviceman seeks to effect a rescission of his enlistment contract by means of the habeas writ in federal court, he must show that he has exhausted all available intraservice remedies." We agree, and now adopt this holding as our own, including within its ambit all habeas petitions seeking discharge from the military under the terms of the petitioner's enlistment contract, or through allegations that such a contract has been illegally formed or breached.

In doing so, we employ the usual considerations used in determining application of the exhaustion doctrine to specific cases, an application which the Supreme Court has observed "requires an understanding of its purposes and of the particular administrative scheme involved." McKart v. United States, 395 U.S. 185, 193, 89 S. Ct. 1657, 1662 (1969).

> Accordingly, in determining whether the exhaustion rule should be rigidly applied, the Court has, on a case-by-case basis, employed a balancing analysis which considers both the interests of the agency in applying its expertise, correcting its own errors, making a proper record, enjoying appropriate independence of decision and maintaining an administrative process free from deliberate flouting, and the interests of private parties in finding adequate redress for their grievances.

Montgomery v. Rumsfeld, 572 F.2d 250, 253 (9th Cir. 1978) (explaining McKart).

With this framework in mind, we find that the balancing analysis in this case weighs in favor of exhaustion. While some of "the practical considerations supporting . . . the requirement of exhaustion of administrative remedies"—unique agency competence and expertise, and development of an adequate factual record on appeal—may not be implicated here, Schlesinger, 420 U.S. at 756, 95 S. Ct. at 1312, our "respect for coordinate judicial systems" and their autonomy, id., has led us, time and again, to require exhaustion in military cases. See, e.g., Linfors v. United States, 673 F.2d 332, 334 (11th Cir. 1982) (per curiam); Von Hoffburg v.

12

Alexander, 615 F.2d 633, 637-38 (5th Cir. 1980); Hodges, 499 F.2d at 420;

Mindes, 453 F.2d at 201; Berry, 411 F.2d at 825.

The exhaustion doctrine, as we have already explained, originated from

broader principles of comity and judicial concern for military independence.

Granberry, 481 U.S. at 134, 107 S. Ct. at 1675 ("[C]omity [is] the basis for the

exhaustion doctrine: 'It is a principle controlling all habeas corpus petitions to the

federal courts . . . .'") (citation omitted). Determining whether federal habeas

corpus relief was available to review "specific assignments to duty," the Court in

Orloff v. Willoughby, 345 U.S. 83, 73 S. Ct. 534 (1953), explained the principles

behind this abiding reluctance to interfere with military affairs:

> We know that from top to bottom of the Army the complaint is often
> made, and sometimes with justification, that there is discrimination,
> favoritism or other objectionable handling of men. But judges are not
> given the task of running the Army. The responsibility for setting up
> channels through which such grievances can be considered and fairly
> settled rests upon the Congress and upon the President of the United
> States and his subordinates. The military constitutes a specialized
> community governed by a separate discipline from that of the civilian.
> Orderly government requires that the judiciary be as scrupulous not to
> interfere with legitimate Army matters as the Army must be
> scrupulous not to intervene in judicial matters.

Id. at 93-94, 73 S. Ct. at 540; see also White v. Callaway, 501 F.2d 672, 674 (5th

Cir. 1974).

13

In Mindes, we "distilled," from Orloff and other federal court precedent, "the primary conclusion that a court should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures." 453 F.2d at 201.[4] In explaining Mindes, we said that "[t]he strict application of the exhaustion doctrine . . . serves to maintain the balance between military authority and the power of federal courts," Von Hoffburg, 615 F.2d at 637, by reducing "'inappropriate intrusion' into military matters." Rucker, 702 F.2d at 969 (quoting Smith v. Fulton, 615 F.2d 196, 201 (5th Cir. 1980)). Thus, "[i]n the military context, the exhaustion requirement promotes the efficient operation of the military's judicial and administrative systems, allowing the military an opportunity to fully exercise its own expertise and discretion prior to any civilian court review." Von Hoffburg, 615 F.2d at 637-38.

Although the court in Woodrick expressly relied on Mindes, see 800 F.2d at 1416, we do not. The Mindes test originally developed from claims in which

---

[4] Mindes also requires that, once a sufficient allegation has been subjected to all available military remedies, a court "must examine the substance of that allegation in light of the policy reasons behind nonreview of military matters," balancing four factors: (1) "The nature and strength of the plaintiff's challenge to the military determination"; (2) "The potential injury to the plaintiff if review is refused"; (3) "The type and degree of anticipated interference with the military function"; and (4) "The extent to which the exercise of military expertise or discretion is involved." 453 F.2d at 201.

14

service members *objected* to a military discharge or other personnel action, and has

generally not been applied in habeas cases, and, in fact, has eroded over time.[5]

---

[5] In <u>Doe v. Garrett</u>, 903 F.2d 1455, 1463 n.15 (11th Cir. 1990), we criticized a panel's prior decision in <u>Stinson v. Hornsby</u>, 821 F.2d 1537, 1541 (11th Cir. 1987), to reverse and remand a district court's dismissal on the merits of a constitutional claim against the Alabama National Guard for reconsideration under <u>Mindes</u> "despite the fact that the issue on the merits was quite simple, the district court's disposition appeared plainly correct, and the district court's consideration of *Mindes* on remand could not possibly have led to a different result." In doing so, "[w]e note[d] that despite the apparent assumption of *Stinson*, this Court and its predecessor have not always applied *Mindes* in constitutional challenges to military personnel decisions." <u>Id.</u> While <u>Mindes</u> may not have always been explicitly applied, its core assumption, we believe, has been adhered to, either expressly or impliedly. <u>See, e.g.</u>, <u>Doe</u>, 903 F.2d at 1463 ("We find nothing objectionable in the district court's application of *Mindes*, and we think it clear that under *Mindes* factors one and three, at least, review of Doe's due process claim in this case is disfavored.") (footnote omitted); <u>Stinson</u>, 821 F.2d at 1540 (express application); <u>Smith v. Christian</u>, 763 F.2d 1322, 1325 (11th Cir. 1985) (per curiam) (implied application in matter involving a conflict between statute setting out physical qualifications for Naval officers and the Rehabilitation Act); <u>Rucker</u>, 702 F.2d at 969-71 (express application); <u>Linfors</u>, 673 F.2d at 333-34 (express application); <u>Woodard</u>, 658 F.2d at 994-95 (express application); <u>Von Hoffburg</u>, 615 F.2d at 637-38 (express application); <u>Smith</u>, 615 F.2d at 201-02 (express application); <u>Johnson v. Reed</u>, 609 F.2d 784, 788-89 (5th Cir. 1980) (express application); <u>Walker v. Alexander</u>, 569 F.2d 291, 292 (5th Cir. 1978) (express application); <u>West v. Brown</u>, 558 F.2d 757, 759 (5th Cir. 1977) (express application); <u>Sims v. Fox</u>, 492 F.2d 1088, 1095 (5th Cir. 1974) (implied application in holding that service member did not have to exhaust military remedies because to do so would be futile, and that the claim was reviewable "based upon a procedural defect that goes to the preparation of the [military discharge] record itself" that "might have a substantially deleterious effect on [the service member's] future capabilities"), <u>rev'd on other grounds</u>, 505 F.2d 857, 864 (5th Cir. 1974) (en banc) ("[W]e think the [district court's] dismissal of the complaint must be allowed to stand, making it unnecessary to discuss the case in light of [exhaustion]."); <u>Hodges</u>, 499 F.2d at 419-20 (express application).

Nevertheless, we have said that <u>Mindes</u> no longer applies to statutory claims, <u>see</u> <u>Doe</u>, 903 F.2d at 1463 n.15, or to claims for injuries that arise incident to service in the military, whether for monetary damages or injunctive relief, which are nonjusticiable across-the-board unless the claim mounts a facial challenge to military regulations. <u>Speigner v. Alexander</u>, 248 F.3d 1292, 1295 n.5, 1298 (11th Cir.), <u>cert. denied</u>, 534 U.S. 1056, 122 S. Ct. 647 (2001); <u>but see id.</u> at 1295 n.5 (expressly reserving a decision on "the applicability of *Mindes* to other situations"); <u>Meister</u>, 233 F.3d at 341 ("[C]laims still fall within *Mindes* . . . that are not 'incident to [a serviceman's] military service.'") (citation omitted).

15

Instead, we reaffirm the unflagging strength of the principles of comity and judicial noninterference with, and respect for, military operations that informed the Mindes doctrine. Thus, to decide this case on the merits without first applying the exhaustion doctrine would only encourage future litigants to deliberately flout military processes, and telegraph that we are no longer serious about, or concerned with, their integrity or autonomy. We therefore hold that a military service member must exhaust all intramilitary remedies before applying for a writ of habeas corpus seeking discharge from the military under the terms of his or her enlistment contract, unless the application falls within a limited number of exceptions to the exhaustion principle. Consequently, unless Winck can demonstrate that his petition implicates one or more of these exceptions, it is due to be denied.[6]

---

[6] Winck argues that we should not consider the exhaustion issue because there is no evidence in the record, and the Navy has not demonstrated, that he actually failed to exhaust his military remedies. While exhaustion is an affirmative defense in a habeas proceeding, the Supreme Court has observed that "[t]he petitioner has the burden . . . of showing that other available remedies have been exhausted," Darr v. Burford, 339 U.S. 200, 218-19, 70 S. Ct. 587, 597-98, and many of our sister circuits have held that the burden of proving exhaustion is on the petitioner. See Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997); Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994); Landano v. Rafferty, 897 F.2d 661, 668 (3d Cir. 1990); Baldwin v. Lewis, 442 F.2d 29, 35 (7th Cir. 1971). Here, the Navy asserts that Winck failed to exhaust his military remedies. In response, Winck's only argument is that there is inadequate evidence in the record as to exhaustion. By implication, then, and by virtue of his failure even to meet a burden of production, we conclude that Winck has, indeed, failed to exhaust his intraservice remedies.

16

Generally, "exhaustion is not required where no genuine opportunity for adequate relief exists, irreparable injury will result if the complaining party is compelled to pursue administrative remedies, or an administrative appeal would be futile." Linfors, 673 F.2d at 334 (citations omitted). Here, Winck argues that irreparable harm must be evaluated at the time the habeas petition was filed in district court, even on appeal; "[o]therwise, the military would always be able to avoid the 'irreparable harm' exception by waiting until after they lose in the district court and then placing the petitioner on inactive reserve before they appeal . . . [,] tactics [that] should not be permitted." Appellee's Br. at 13 n.8. At the time of his original petition, Winck claims that he would have suffered irreparable harm if required to exhaust his military remedies because he "was faced with imminent deployment to the Persian Gulf," the same region in which the attack on the U.S.S. Cole occurred. Appellee's Br. at 12.[7]

Winck's arguments, however, are without merit, besides the fact that he points to no authority, binding or persuasive, to support his reasoning. Admittedly, "it seems unwise to adopt a rule that would permit, and might even encourage, the

---

[7] For this reason, Winck contends that the district court did not abuse its discretion in finding irreparable harm. Yet, the court found no such thing. Expressing no opinion on whether Winck exhausted his military remedies, but merely assuming that he had, the district court observed that, even if he had not, "the irreparable injury exception would *appear* to apply *if* [Winck's] claims [as to irreparable injury] have merit." R1-15 at 3 n.2 (emphasis added).

[military] to seek a favorable ruling on the merits in the district court while holding the exhaustion defense in reserve for use on appeal if necessary," and then thwarting application of the irreparable harm exception by placing the petitioner on inactive reserve. Granberry, 481 U.S. at 132, 107 S. Ct. at 1674. But to hold otherwise would simply reinforce strategic behavior by habeas petitioners who intentionally evade intraservice remedies because they have little to lose if the military raises exhaustion as a defense to the district court, since they would need only to refile after exhaustion, and everything to gain if the military fails to do so, since the appellate court would then be constrained to consider irreparable harm at the time the original habeas petition was filed. The former contrivance rewards the military at the expense of a habeas petitioner, whereas the latter rewards the petitioner at the expense of the military; in both cases, whether through inadvertence or otherwise, the petitioner has failed to exhaust intramilitary remedies, and the military has failed to raise the exhaustion defense at the district court level.[8]

In light of the exceeding importance we place on the exhaustion of intramilitary remedies before a petitioner may invoke the power of the federal courts, on balance, we conclude that the irreparable harm exception to the

---

[8] As we have already observed, the district court may raise exhaustion sua sponte and, therefore, is at least able to check the intentional failure of the parties in this regard.

18

exhaustion requirement is to be examined as of the time intramilitary remedies must actually be sought, and not necessarily at the time the original petition was filed. Because the military here has placed Winck on inactive status, "a status that imposes *no* military duties or responsibilities," and pledges to "preserve the status quo" as well as to expedite his claim, Appellant's Br. at 16, we find that Winck will suffer no irreparable harm by pursuing, as he should have originally, his military remedies.[9]

Winck next argues that exhaustion would be futile because, in his case, "the outcome of any intramilitary administrative procedure [would be] both biased and predetermined." Appellee's Br. at 13. Since any appeal to the BCNR depends upon final approval by the Secretary of the Navy, a party to Winck's action, and

---

[9] Even if we were to evaluate irreparable harm at the time Winck originally filed his petition, we cannot say that military deployment, in and of itself, necessarily entails such injury, even if to volatile regions, especially since the eighteen months of his "young life that he will never regain" was, for the most part, lost during the sixteen months he decided to wait before filing the habeas petition in district court. Appellee's Br. at 12. Holding otherwise could unduly hamper urgent military operations during times of crisis. As the Court in Orloff pointed out:

> Orloff was ordered sent to the Far East Command, where the United States is now engaged in combat. By reason of these proceedings, he has remained in the United States and successfully avoided foreign service until his period of induction is almost past. Presumably, some doctor willing to tell whether he was a member of the Communist Party [unlike Orloff] has been required to go to the Far East in his place. It is not difficult to see that the exercise of such jurisdiction as is here urged would be a disruptive force as to affairs peculiarly within the jurisdiction of the military authorities.

345 U.S. at 94-95, 73 S. Ct. at 540.

19

since the Secretary has "steadfastly insist[ed] that Winck is not entitled to any relief," Winck argues that "it is ridiculous to expect the Secretary of the Navy to suddenly change his mind and realize the error of his ways if this matter is brought before the BCNR." Id. at 13, 14. This exact argument was flatly rejected in Hodges. First, "though the Secretary may overrule the [BCNR's] recommendations for relief, he cannot do so arbitrarily; if he rejects the [BCNR's] recommendations, he must provide either explicitly stated policy reasons, or his action must be supported by the record and evidence presented to the [BCNR]." 499 F.2d at 423.

> [Second], to base an exception to the exhaustion requirement on the fact that the final administrative decision is subject to the discretionary power of the Secretary would in effect turn the exhaustion doctrine on its head. Exhaustion is required in part because of the possibility that administrative review might obviate the need for judicial review. . . . [A]ppellant's futility reasoning would mean that exhaustion of intraservice remedies should always be excused. The administrative remedy . . . may offer cold comfort and small consolation, but it is surely beyond our authority to permit the exceptions to the exhaustion doctrine to swallow the rule.

Id. Thus, we conclude that Winck's petition is not subject to any of the recognized exceptions to the exhaustion principle he relies on, and, therefore, his petition is barred for failure to exhaust his military remedies.

## III. CONCLUSION

We hold that, while we have jurisdiction to review the merits of a habeas corpus petition brought by a service member seeking to effect his discharge from the military on the terms of his enlistment contract, we will decline to exercise it where the petitioner has failed to exhaust his intramilitary administrative remedies, unless there is some legitimate and compelling reason to excuse the failure. Also, where the interests of comity and our own precedent so counsel, we may consider exhaustion as a defense in this context, even if raised for the first time on appeal. Finally, in determining whether the failure to exhaust is excused under the recognized exception of avoiding irreparable harm to the petitioner, we look to the potential harm that exists at the time we would otherwise require the petitioner to exhaust his administrative remedies, and not necessarily to the time the original petition was filed. In this case, the petitioner failed to appeal his case to the BCNR and no recognized exceptions to the exhaustion requirement apply. Accordingly, we **REVERSE** the district court's order granting a writ of habeas corpus, and **REMAND** with instructions to dismiss without prejudice so that the petitioner may exhaust his military remedies.[10]

---

[10] Under the rule of Hodges, once exhaustion has been determined to apply, the district court may not retain jurisdiction pending exhaustion of administrative remedies. 499 F.2d at 421; Von Hoffburg, 615 F.2d at 641 n.15. However, we are comforted by the Navy's express and unconditional representation that it will keep the petitioner on inactive reserve status during the

21

pendency of its expedited review of his claim.  We caution the Navy that our holding is explicitly predicated on our finding that Winck will suffer no irreparable harm during this review period based in part on this representation, and that, should it be breached, Winck may have ground for injunctive relief based on a reassessment of this finding.