[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-14384

_____

D.C. Docket No. 1:12-cv-04065-WMA-HGD

ISRAEL SANTIAGO-LUGO,

Petitioner-Appellant,

versus

WARDEN,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(April 30, 2015)

Before ED CARNES, Chief Judge, JILL PRYOR and HIGGINBOTHAM,[*] Circuit
Judges.

ED CARNES, Chief Judge:

---

[*] Honorable Patrick E. Higginbotham, United States Circuit Judge for the Fifth Circuit,
sitting by designation.

For obvious reasons, prisons typically prohibit inmates from possessing cell phones. An orphan cell phone was found during a random search in the Federal Correctional Complex at Coleman Medium Prison in Florida. An examination of the phone's call history showed that the son of inmate Israel Santiago-Lugo had called that phone the day before it was found. Santiago-Lugo was charged in a prison incident report with having violated the rule against possession of a cell phone. After a hearing he was instead found to have violated the rule against conduct that disrupts or interferes with the orderly running of the institution. As a result, he lost good time credits and suffered other sanctions.

Santiago-Lugo filed a 28 U.S.C. § 2241 petition claiming that his procedural due process rights had been violated in the disciplinary proceeding. The district court ruled that it lacked subject matter jurisdiction because he had failed to exhaust his administrative remedies. The court alternatively ruled that his due process claim failed on the merits. He challenges the jurisdictional ruling and then the merits ruling. His first challenge succeeds, his second one does not. We affirm.

I.

Santiago-Lugo was imprisoned at the Federal Correctional Complex at Coleman Medium. On February 10, 2012, corrections officers at Coleman found a cell phone during a random prison search. The phone showed that Santiago-

2

Lugo's son had called it the day before.  At the conclusion of the investigation, Santiago-Lugo received an incident report from the investigating officer charging him with violating Bureau of Prisons (BOP) Code 108, "Possession of a Cellular Phone."  The charge was referred to a Unit Disciplinary Committee which, after more investigation, referred it on to a discipline hearing officer.

The discipline hearing officer held a hearing on March 14, 2012.  Santiago-Lugo appeared with his staff representative and testified along with another inmate.  Santiago-Lugo testified that he had never possessed the cell phone or talked on it.  He said that another inmate owned the phone and had used it to talk to Santiago-Lugo's son.  That other inmate then testified that he and Santiago-Lugo's son were friends and that they had talked on the phone.  The BOP offered into evidence a "kite," which is prison-speak for an illicit letter smuggled past prison officials. The kite, which was found in Santiago-Lugo's cell, was written by the inmate who testified for him, and it assured him that the inmate would accept responsibility for the cell phone.

The discipline hearing officer considered Santiago-Lugo's denial, but citing the "weight of [the] evidence," including the kite written to Santiago-Lugo, he concluded that Santiago-Lugo had violated BOP Code 199, "Conduct Which Disrupts or Interferes with the Security or Orderly Running of the Institution (Most like Possession of a Hazardous Tool; Cell Phone, Code 108)."  The sanctions

3

imposed on Santiago-Lugo included the loss of 40 days of good-conduct time, disciplinary segregation for 60 days, and the loss of certain privileges for six months. He was advised of his right to appeal, and on April 25, 2012, he received a copy of the discipline hearing officer's report.

On May 3, 2012, Santiago-Lugo timely filed a Regional Administrative Remedy Appeal, which the regional director denied on May 24. From that date, Santiago-Lugo had 30 days to file a Central Office Administrative Remedy Appeal with the BOP's Office of General Counsel. See 28 C.F.R. § 542.15(a). He asserts that he did file an appeal within that time frame, and in support of that assertion he points to a certified mail receipt indicating that the Office of General Counsel received a letter from him on June 15. But the Administrative Remedy Index, the database into which that appeal would have been entered, has no record of it.

Regardless of whether Santiago-Lugo filed a Central Office Administrative Remedy Appeal with the Office of General Counsel on June 15, it is undisputed that he filed (or refiled) one on September 18, 2012. Because that September 18, 2012, appeal was filed more than 30 days after the regional director's May 24 denial, the Central Office rejected it as untimely. The Central Office advised Santiago-Lugo that it might still consider his appeal if he provided written documentation on BOP letterhead indicating that it was not his fault that the appeal was untimely. But a unit manager at the Federal Correctional Institution at

Talladega, Alabama — the prison to which Santiago-Lugo had been transferred after the initial discipline decision — would not give him the letterhead. The unit manager explained that he could not do so because Santiago-Lugo had not been a prisoner at Talladega when he first requested an administrative remedy. Santiago-Lugo filed no further appeals with the BOP.

On December 10, 2012, Santiago-Lugo filed a 28 U.S.C. § 2241 habeas corpus petition in the United States District Court for the Northern District of Alabama. The petition, as later amended, sought relief on due process grounds from the disciplinary sanctions that Santiago-Lugo had received because of the cell phone infraction. A magistrate judge issued a report recommending that the amended petition be denied for two reasons. First, Santiago-Lugo had failed to exhaust his administrative remedies, so the district court lacked jurisdiction to hear his petition. Second, even if the court had jurisdiction to hear his petition, Santiago-Lugo's due process claim failed on the merits. The district court adopted the magistrate judge's report and recommendation and denied Santiago-Lugo's petition.

II.

We review de novo the district court's denial of a § 2241 petition, but review its factfindings for clear error. Bowers v. Keller, 651 F.3d 1277, 1291 (11th Cir. 2011). We are obligated to determine whether the district court had subject matter

5

jurisdiction to consider Santiago-Lugo's § 2241 petition and whether we have jurisdiction to hear his appeal.  See Williams v. Chatman, 510 F.3d 1290, 1293 (11th Cir. 2007).  This Court and the district court must have subject matter jurisdiction over a claim in order to decide it on the merits.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93–102, 118 S. Ct. 1003, 1012–16 (1998) (instructing that Article III courts must first ensure that they have subject matter jurisdiction over a cause of action before addressing its merits).

We start with the jurisdiction issue, asking whether a § 2241 petitioner's failure to exhaust administrative remedies is a jurisdictional defect.  We conclude that it is not, meaning that even if Santiago-Lugo failed to exhaust his administrative remedies, we and the district court would still have jurisdiction over his claim.  The district court reached the opposite conclusion by relying on five decisions from this Court.  See Skinner v. Wiley, 355 F.3d 1293, 1295 (11th Cir. 2004); Winck v. England, 327 F.3d 1296, 1306 (11th Cir. 2003); Gonzalez v. United States, 959 F.2d 211, 212 (11th Cir. 1992); United States v. Lucas, 898 F.2d 1554, 1555 (11th Cir. 1990); United States v. Mitchell, 845 F.2d 951, 952 (11th Cir. 1988).[1]  Of those five decisions, only our opinion in Gonzalez actually

_____

[1] The district court also relied on one Supreme Court decision, see Porter v. Nussle, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002), but that reliance was misplaced.  The Porter decision held that an inmate had to exhaust administrative remedies before bringing a 42 U.S.C. § 1983 lawsuit under the Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e(a).  It did not hold, however, that an inmate's failure to exhaust administrative remedies deprived courts of subject matter jurisdiction over a 28 U.S.C. § 2241 petition or any other type of claim.

held that failure to exhaust administrative remedies deprives a court of subject

matter jurisdiction over a § 2241 petition, and it only ipse dixited that

"[e]xhaustion of administrative remedies is jurisdictional."  959 F.2d at 212.[2]  And

Gonzalez reached that conclusion not because § 2241 actually addressed the scope

of our jurisdiction over § 2241 petitions, but because we had held in other

decisions that exhaustion that was explicitly required by the governing statutes was

jurisdictional with respect to the other inmate claims brought under those statutes.[3]

Id.  Regardless of how we got there, a number of recent Supreme Court decisions

since Gonzalez have undermined it to the point of abrogation.  See United States v.

Lopez, 562 F.3d 1309, 1312 (11th Cir. 2009) ("We remain bound by the rule of our

prior precedent unless and until it is overruled or undermined to the point of

abrogation by the Supreme Court or by this court sitting en banc.") (quotation

marks omitted).

---

[2] Skinner and Winck mention Gonzalez's holding only in dicta.  Skinner, 355 F.3d at 1295; Winck, 327 F.3d at 1300 n.1.  Lucas and Mitchell predate Gonzalez and do not address § 2241 petitions at all.  Lucas, 898 F.2d at 1555; Mitchell, 845 F.2d at 952–53.

[3] Beginning in 2005, 13 years after Gonzalez was decided, Congress enacted a series of amendments to § 2241 aimed at limiting the jurisdiction of courts to hear § 2241 petitions brought by aliens detained as enemy combatants.  See Pub. L. No. 109-148, § 1005(e)(1), 119 Stat. 2680, 2742 (2005); Pub. L. No. 109-163, § 1405(e)(1), 119 Stat. 3136, 3477 (2006); Pub. L. No. 109-366, § 7(a), 120 Stat. 2600, 2635 (2006); Pub. L. No. 110-181, § 1063(f), 122 Stat. 3, 323 (2008).  That statutory jurisdictional bar erected by Congress in those amendments, currently found in 18 U.S.C. § 2241(e), is different from the judge-made jurisdictional bar against unexhausted § 2241 petitions set forth in Gonzalez.  The latter bar, which has no statutory home, is the only one at issue in the present case.

The Supreme Court has noted that courts, including it, "have sometimes mischaracterized claim-processing rules or elements of a cause of action as jurisdictional limitations." Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 161, 130 S. Ct. 1237, 1243–44 (2010).  As a result, the term "jurisdiction" has become "a word of many, too many, meanings." Steel Co., 523 U.S. at 90, 118 S. Ct. at 1010 (quotation marks omitted).  Used correctly, "'[j]urisdiction' refers [only] to 'a court's adjudicatory authority.'" Reed Elsevier, 559 U.S. at 160, 130 S. Ct. at 1243 (quoting Kontrick v. Ryan, 540 U.S. 443, 455, 124 S. Ct. 906, 915 (2004)). So "the term 'jurisdictional' properly applies only to 'prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction)' implicating that authority." Id. at 160–61, 130 S. Ct. at 1243; see also Steel Co., 523 U.S. at 89, 118 S. Ct. at 1010 (noting that "subject-matter jurisdiction" refers to "the courts' statutory or constitutional power to adjudicate the case").  Examples of non-jurisdictional rules, on the other hand, include "claim-processing rules," such as exhaustion requirements, which "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 131 S. Ct. 1197, 1203 (2011).

Problems can arise when courts conflate non-jurisdictional rules with jurisdictional ones.  The Supreme Court has "cautioned, in recent decisions,

against profligate use of the term [jurisdictional]," <u>Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen</u>, 558 U.S. 67, 81, 130 S. Ct. 584, 596 (2009), and has "tried . . . to bring some discipline to the use of [the] term," <u>Henderson ex rel. Henderson</u>, 131 S. Ct. at 1202.  One way that the Court has tried to "curtail . . . 'drive-by jurisdictional rulings'" is to "encourage[] federal courts and litigants to 'facilitate' clarity by using the term 'jurisdictional' only when it is apposite."  <u>Reed Elsevier</u>, 559 U.S. at 161, 130 S. Ct. at 1244 (alteration omitted) (quoting <u>Steel Co.</u>, 523 U.S. at 91, 118 S. Ct. at 1011; <u>Kontrick</u>, 540 U.S. at 455, 124 S. Ct. at 915).  And to help courts know when the term "jurisdictional" is appropriate, the Supreme Court has offered this approach:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character.

<u>Id.</u> at 161–62, 130 S. Ct. at 1244 (quoting <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 515–16, 126 S. Ct. 1235, 1245 (2006)).  In other words, where Congress does not say there is a jurisdictional bar, there is none.

The Supreme Court applied this approach in <u>Reed Elsevier</u> when deciding whether the copyright registration requirement in 17 U.S.C. § 411(a) was jurisdictional.  <u>Id.</u> at 163–66, 130 S. Ct. at 1245–47.  In reaching the conclusion that the requirement was a procedural rule, instead of a jurisdictional one, the

9

Court emphasized three considerations:  (1) the language of § 411(a) does not "clearly state[] that its registration requirement is jurisdictional"; (2) neither 28 U.S.C. § 1331 nor § 1338(a), which grant district courts subject matter jurisdiction over questions of federal law and over copyright claims, makes subject matter jurisdiction contingent on satisfying the registration requirement; and (3) the requirement does not "speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts."  Id. (quotation marks omitted).  Because it is not jurisdictional, a party's failure to satisfy the registration requirement does not affect a district court's subject matter jurisdiction.

The Supreme Court employed a similar analysis in Gonzalez v. Thaler when deciding that another part of the federal habeas corpus statute, one other than § 2241, was non-jurisdictional.  See — U.S. —, 132 S. Ct. 641, 647–50 (2012).  Thaler involved the part of 28 U.S.C. § 2253 that lays out what must occur before a party can appeal a final order in a habeas corpus proceeding.  Id.  The first paragraph at issue, § 2253(c)(1), speaks in "jurisdictional" terms, saying that, "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from [a final order]."  28 U.S.C. § 2253(c)(1).  But the two paragraphs that follow § 2253(c)(1) do not speak in those same jurisdictional terms.  Id. § 2253(c)(2)–(3).  They indicate only what an

10

applicant has to show for a COA to issue, and they do not say that the failure to

fulfill those requirements somehow alters a court's subject matter jurisdiction:

> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

Id.

Because of the difference in the language of § 2253(c)(1), (c)(2), and (c)(3),

the Supreme Court held that § 2253(c)(1) establishes a jurisdictional bar, but

§ 2253(c)(3) does not.  Thaler, 132 S. Ct. at 649.  As in Reed Elsevier, the

governing principle for the Thaler decision was that jurisdictional bars exist only

"'[i]f the Legislature clearly states that a threshold limitation on a statute's scope

shall count as jurisdictional.'  But if 'Congress does not rank a statutory limitation

on coverage as jurisdictional, courts should treat the restriction as non-

jurisdictional.'"  Thaler, 132 S. Ct. at 648 (quoting Arbaugh, 546 U.S. at 515–16,

126 S. Ct. at 1245).  Because § 2253(c)(3) "does not speak in jurisdictional terms

or refer in any way to the jurisdiction of the [appeals] courts," it is non-

jurisdictional.  Id. (quotation marks omitted).

Applied to § 2241, the Supreme Court's decisions in Thaler and Reed

Elsevier, both of which came after our Gonzalez decision, compel the conclusion

that Gonzalez was wrong.[4]  Congress has not stated that the § 2241 exhaustion

requirement "shall count as jurisdictional."  In fact, Congress said nothing at all in

§ 2241 about exhaustion, which is a judge-made requirement.  Section 2241 itself

does not impose an exhaustion requirement, let alone one that "speak[s] in

jurisdictional terms or refer[s] in any way to the jurisdiction of the . . . courts."

Reed Elsevier, 559 U.S. at 165, 130 S. Ct. at 1246.  There is nothing in the statute

to support the conclusion that the judicially imposed exhaustion requirement is

jurisdictional.

The absence of a clear statutory exhaustion bar for petitions like Santiago-

Lugo's is highlighted by the unequivocal jurisdictional bar that Congress did put

in § 2241 for certain types of petitions.  Section 2241(e)(1) says, for instance, that:

> No court, justice, or judge shall have jurisdiction to hear or consider
> an application for a writ of habeas corpus filed by or on behalf of an
> alien detained by the United States who has been determined by the

---

[4] That Thaler dealt with a different section of the habeas corpus statute and Reed Elsevier dealt with a different statute altogether does not undermine our conclusion that those two decisions abrogated Gonzalez.  See United States v. Sneed, 600 F.3d 1326, 1332 (11th Cir. 2010) (holding that one of our prior panel precedents involving the Armed Career Criminal Act was undermined to the point of abrogation by Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254 (2005), even though Shepard dealt with a different provision of that Act); United States v. Lopez, 562 F.3d 1309, 1312 (11th Cir. 2009) (holding that one of our prior panel precedents about when criminal filing deadlines are jurisdictional was abrogated by Bowles v. Russell, 551 U.S. 205, 127 S. Ct. 2360 (2007), even though Bowles dealt with civil filing deadlines); United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008) (holding that one of our prior panel precedents was undermined to the point of abrogation by Begay v. United States, 553 U.S. 137, 128 S. Ct. 1581 (2008), even though Begay addressed a different crime and a different sentencing law); see also United States v. Hogan, 986 F.2d 1364, 1369 (11th Cir. 1993) ("It is the law of this Circuit that a subsequent panel is not obligated to follow a prior panel's decision where an intervening Supreme Court decision establishes that the prior panel decision is wrong.").

United States to have been properly detained as an enemy combatant or is awaiting such determination.  (Emphasis added.)

And § 2241(e)(2) says:

> [N]o court, justice, or judge shall have jurisdiction to hear or consider any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination. (Emphasis added.)

Congress knows how to limit courts' subject matter jurisdiction to decide § 2241 petitions when it wishes to do so.  The fact that it did not limit courts' subject matter jurisdiction to decide unexhausted § 2241 claims compels the conclusion that any failure of Santiago-Lugo to exhaust administrative remedies is not a jurisdictional defect.  Cf. Thaler, 132 S. Ct. at 649 ("The unambiguous jurisdictional terms of §§ 2253(a), (b), and (c)(1) show that Congress would have spoken in clearer terms if it intended § 2253(c)(3) to have similar jurisdictional force.  Instead, the contrast underscores that the failure to obtain a COA is jurisdictional, while a COA's failure to indicate an issue is not.").

For all of those reasons, we conclude that our Gonzalez decision is a purely posthumous precedent.  It is no longer the law of this circuit that exhaustion of administrative remedies is a jurisdictional requirement in a § 2241 proceeding.[5]

---

[5] To the extent that other published decisions of this Circuit have held or stated that exhaustion is a jurisdictional prerequisite to § 2241 relief, they too have been undermined to the

13

Of course, that does not mean that courts may disregard a failure to exhaust and grant relief on the merits if the respondent properly asserts the defense.  Skinner, 355 F.3d at 1295 ("We agree with the reasoning of our sister circuits and hold that prisoners seeking habeas relief, including relief pursuant to § 2241, are subject to administrative exhaustion requirements.").  The exhaustion requirement is still a requirement; it's just not a jurisdictional one.  What its non-jurisdictional nature means is that a court need not inquire into exhaustion on its own.  A court has the discretion to accept or reject a concession from the respondent that administrative remedies have been exhausted.  See Roberts v. Galen of Va., Inc., 525 U.S. 249, 253, 119 S. Ct. 685, 687 (1999) ("[T]he concession of a point on appeal by respondent is by no means dispositive of a legal issue. . . ."); United States v. Harris, 608 F.3d 1222, 1226 (11th Cir. 2010) (accepting the government's concession that a criminal defendant's prior conviction was a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(i)); United States v. Linville, 228 F.3d 1330, 1331 n.2 (11th Cir. 2000) (refusing to accept the government's concession of error on the ground that "[w]e are not required to accept such a concession when the law and the record do not justify it").  And because exhaustion is non-jurisdictional, even when the defense has been preserved and asserted by the respondent

point of abrogation.  See, e.g., United States v. Williams, 425 F.3d 987, 990 (11th Cir. 2005); Skinner, 355 F.3d at 1295; Winck, 327 F.3d at 1300 n.1; Boz v. United States, 248 F.3d 1299, 1300 (11th Cir. 2001).

14

throughout the proceeding, a court may skip over the exhaustion issue if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching the exhaustion question.  See Granberry v. Greer, 481 U.S. 129, 131, 107 S. Ct. 1671, 1674 (1987) ("[T]here are some cases in which it is appropriate for an appellate court to address the merits of a habeas corpus petition notwithstanding the lack of complete exhaustion.") (quotation marks omitted).

In his latest brief, the Warden has conceded that Santiago-Lugo exhausted his administrative remedies.  We accept that concession and proceed to the merits of the petition.

## III.

Santiago-Lugo contends that the BOP denied him procedural due process when it reduced his good time credits and imposed other sanctions as punishment for having a cell phone.[6]  The Supreme Court has held that inmates must be given certain due process protections before they are deprived of their protected liberty interest in good time credits, including at least 24 hours advance written notice of

---

[6] Santiago-Lugo also contends that it was error for the district court to convert the Warden's answer to his petition into a motion for summary judgment.  This is not a situation where the court converted a respondent's answer to a motion for summary judgment and decided it without giving the petitioner an opportunity to respond.  Instead, the district court issued an order stating that it was going to consider the Warden's answer, and the exhibits it included, as a motion for summary judgment. The order gave Santiago-Lugo 20 days to "respond with counter-affidavits and/or documents to set forth specific facts showing that there is a genuine issue of material fact to be litigated at the trial."  Santiago-Lugo filed a timely response with his own supporting exhibits.  Proper procedure was followed.

the charges against them and the right to call witnesses and present documentary evidence. Wolff v. McDonnell, 418 U.S. 539, 563–67, 94 S. Ct. 2963, 2978–80 (1974).

Santiago-Lugo's primary contention is that the advance notice he received of the charge against him was deficient because it charged him with BOP Code 108, "Possession of a Cellular Phone," but the discipline hearing officer found instead that he had violated BOP Code 199, "Conduct Which Disrupts or Interferes with the Security or Orderly Running of the Institution (Most like Possession of a Hazardous Tool; Cell Phone, Code 108)."[7] The purpose of the advance notice requirement, however, "is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." Id. at 564, 94 S. Ct. at 2978. That purpose was served here because Santiago-Lugo was informed that he was charged with possessing and using a cellular phone, the same conduct that served as the basis for his violation of BOP Code 199.[8] The only evidence he has

---

[7] Santiago-Lugo argues that the district court mischaracterized his notice argument as being that he should have received notice of the offense "within 24 hours after it occurred." Instead, his argument was and is that he should have received notice at least 24 hours in advance of the hearing (as Wolff requires). That is true, but the district court's characterization of it does not matter for two reasons. First, our review is de novo and we understand the argument. Second, the fact is that Santiago-Lugo received notice 12 days — or 288 hours — before the hearing, which is far more notice than the law requires.

[8] Our sister circuits have consistently rejected claims similar to this one, on much the same reasoning. See, e.g., Northern v. Hanks, 326 F.3d 909, 911 (7th Cir. 2003) (finding that because the factual basis of the investigative report offered the petitioner adequate information to defend against a modified charge, the modification did not deprive the petitioner of due process); Holt v. Caspari, 961 F.2d 1370, 1371–73 (8th Cir. 1992) (rejecting petitioner's claim that the upgrading of a violation from "minor" to "major" denied him notice of the charge where "the factual basis

16

suggested that he would have submitted if he had known he might be convicted of violating Code 199 is equally relevant to the Code 108 charge that was specified in the notice he did receive. Not only are both charges "Greatest Severity Level Prohibited Acts" and subject to the same sanctions, see 28 C.F.R. § 541.3, Table 1 (2015), but the regulations expressly permit a discipline hearing officer to find that an inmate "committed the prohibited act(s) charged, and/or a similar prohibited act(s) as described in the [notice]," id. § 541.8(a)(1) (emphasis added).

Santiago-Lugo also asserts that he should have received notice that the "kite" would be used against him at his hearing. But nothing in Wolff's due process requirements requires advance notice of specific evidence that will be used against a prisoner at a disciplinary hearing.[9]

**AFFIRMED.**

---

for both was the possession of the same Valium at the same time" and the incident report "gave [the petitioner] all of the information he needed to make his defense"); Bostic v. Carlson, 884 F.2d 1267, 1270–71 (9th Cir. 1989) (rejecting petitioner's claim that he was denied due process because "he was found guilty of a disciplinary violation with which he was not charged in the incident report" where the incident report nonetheless "described the factual situation that was the basis for the finding of guilt").

[9] We note that Santiago-Lugo represented to the district court that the "kite" at issue was found in his cell. So he was aware of its existence, and he should have anticipated it being used against him at the hearing.

17