[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-13059
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cv-00083-WLS-TQL

EDWARD EUGENE BARBER,

Plaintiff-Appellant,

versus

THOMAS J. KREPP,
Assistant U.S. Attorney,
U.S. Department of Justice,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(February 22, 2017)

Before ED CARNES, Chief Judge, JORDAN and ROSENBAUM, Circuit Judges.

PER CURIAM:

Edward Barber appeals the district court's order denying his motion to proceed in forma pauperis and dismissing his complaint without prejudice. He argues that, although he is a "frequent filer" under 28 U.S.C. § 1915(g), he has sufficiently alleged that he faces "imminent danger of serious physical injury."

Barber alleges that he received a letter from the Department of Justice and Thomas Krepp, an Assistant United States Attorney, in June 2014. The letter informed him that he might be a victim of fraud in an active criminal case. The letter assigned Barber a victim identification number and directed him to report threats or harassment in retaliation for his cooperation with the government.

According to Barber, the people who defrauded him were officials from the Georgia Department of Corrections, Department of Law, and State Board of Pardons and Parole. He claims that they have retaliated against him for reporting what he believes are numerous violations of federal law to the United States Attorney. He filed a lawsuit to compel Krepp to take steps to protect him from further retaliation.[1]

---

[1] The United States, as amicus curiae, argues that the district court lacked jurisdiction over Barber's claims. It argues that, because Barber's claims are based on the Crime Victims Rights Act (CVRA) and the only case it can find in which Barber might have been a victim is from the Northern District of Georgia, he was required to file this action there. We disagree. While it is true that the CVRA provides that actions to enforce its guarantees should be filed in the district where the crime occurred or a prosecution is ongoing, 18 U.S.C. § 3771(b)(1), we are not persuaded that this requirement is jurisdictional. "The Supreme Court has cautioned, in recent decisions, against profligate use of the term [jurisdictional] . . . ." Santiago-Lugo v. Warden, 785 F.3d 467, 472 (11th Cir. 2015) (quotation marks and citations omitted) (first alteration in original). In general, it has suggested that "where Congress does not say there is a

"We review the denial of a petition to proceed in forma pauperis for abuse of discretion, . . . but we review interpretations of the [Prison Litigation Reform Act] de novo . . . ." Daker v. Comm'r, Ga. Dep't. of Corr., 820 F.3d 1278, 1283 (11th Cir. 2016) (citations omitted). "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." Hartford Cas. Ins. Co. v. Crum & Forster Specialty Ins. Co., 828 F.3d 1331, 1333 (11th Cir. 2016) (quotation marks omitted). Whether a prisoner is entitled to proceed in forma pauperis under § 1915(g) must be determined based upon the complaint, "which we must construe liberally [because it was filed pro se] and the allegations of which we must accept as true." Brown v. Johnson, 387 F.3d 1344, 1350 (11th Cir. 2004).

Section 1915(g) was enacted as part of the Prison Litigation Reform Act and provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to

jurisdictional bar, there is none." Id. at 473. Congress has not said so here and we see no other reason to conclude that § 3771(b)(1) speaks to jurisdiction instead of venue. Additionally, it is not clear to us that all of Barber's claims are premised on the CVRA. For example, at one point in his amended application for mandamus relief Barber appears to argue that the U.S. Attorney's office's failure to take reasonable steps to protect him — as the CVRA requires — resulted from discrimination on the basis of disability.

state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Barber concedes that he has three "strikes" under this provision, but argues that he falls within its "imminent danger of serious physical injury" exception. The district court concluded that he did not fall within that exception because his allegations were not sufficiently specific. In particular, it emphasized that Barber talked a lot about past harm and failed to identify who had threatened him and what they had threatened to do. We disagree.

While simply recounting past injuries is not sufficient to establish an "imminent danger of physical injury" under § 1915(g), a prisoner can establish it by recounting recent injuries that reveal an "ongoing pattern of acts" as well as threats of future harm. Chavis v. Chappius, 618 F.3d 162, 170–71 (2d Cir. 2010). In his various filings in the district court,[2] Barber claims that, among other things, he has been stabbed, almost lost an eye, and been threatened with unnecessary anti-psychotic medication in retaliation for his cooperation with the government. He alleges that three of those incidents were severe enough to qualify as attempts on his life. He asserts that he was told that prison officials would use force to

---

[2] It is not necessary that the allegations of imminent harm be contained in a document labelled a complaint; instead the question is "whether some timely filing avers facts suggesting a prisoner was under imminent danger of physical injury . . . ." See Asemani v. U.S. Citizenship and Immigration Servs., 797 F.3d 1069, 1074–75 (D.C. Cir. 2015) (quotation marks omitted). We do, however, decline to consider the allegations in Barber's initial application for a writ of mandamus and his May 29, 2015 addendum to it. Both would have been superseded by the amended application for a writ of mandamus that he filed on June 3, 2015.

administer unnecessary medical treatment and, if he died in the process, would justify his death by planting a weapon on his person.  Barber's request for a motion to enjoin third parties mentions by name several individuals who were allegedly involved in his harassment.  And, construing the filings liberally, all of this apparently occurred between the time he received the letter in June 2014 and the time he filed various documents with the district court in June 2015.  Those allegations are sufficient to establish an "imminent danger of serious physical harm," and it was an abuse of discretion for the district court to conclude otherwise.

That conclusion is not altered by the fact that, during the pendency of this appeal, Barber has been transferred from the prison where the past attacks allegedly occurred.  Barber claims that his harassment is the result of a conspiracy that reaches beyond Autry State Prison to include, among others, the statewide Georgia Department of Corrections and the Board of Pardons and Parole.  As a result, it is not clear that merely transferring him from one prison to another within the Georgia penal system will end the alleged retaliation against him.[3]

It is true that the Second Circuit has concluded that, in order to fall within the "imminent danger" exception to § 1915(g), the prisoner must demonstrate a

---

[3] For the same reason, we reject the suggestion of the United States, as <u>amicus curiae</u>, that Barber's transfer moots this case.  That being said, if it later becomes clear that the transfer has ended any risk of retaliation, the district court would be obligated to reconsider this issue.

"nexus" between the physical injury he fears and the claims in his complaint. Pettus v. Morgenthau, 554 F.3d 293, 397 (2d Cir. 2009). The United States, as amicus curaie, suggests that we should adopt this view of the statute. But we need not decide in the present case whether § 1915(g)'s "imminent danger" exception requires proof of such a nexus. Even if it did, Barber has alleged a nexus between the harm he has suffered and the defendant's inaction. Barber argues that he continues to live under threat of physical injury because the defendant has not, among other things, helped him to obtain a restraining order to stop prison officials he has accused of committing federal crimes from abusing him. In essence, he appears to claim that "reasonably protect[ing]" him "from the accused" requires rendering such assistance. 18 U.S.C. § 3771(a)(1).

Of course, it is very possible that some or all of Barber's claims may be subject to dismissal for reasons other than his status as a "frequent filer." But "[section] 1915(g) concerns only a threshold procedural question — whether the filing fee must be paid upfront or later. Separate PLRA provisions are directed at screening out meritless suits early on." Andrews v. Cervantes, 493 F.3d 1047, 1055 (9th Cir. 2007). We leave those preliminary merits determinations for the district court on remand.

The district court's judgment of dismissal is **VACATED**, its order denying leave to proceed in forma pauperis and dismissing Barber's complaint is

6

**REVERSED**, and the case is **REMANDED** to the district court with instructions to grant leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u> and for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**