[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-15127
Non-Argument Calendar
_____

D.C. Docket No. 4:17-cv-00443-MW-GRJ

SHONDOLYN BLEVINS,

Petitioner-Appellant,

versus

FCI HAZELTON WARDEN,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(July 13, 2020)

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR, and ED CARNES, Circuit Judges.

PER CURIAM:

Shondolyn Blevins is a federal prisoner who was disciplined after sending an obscene and profanity-laden letter to a correctional officer. She filed a 28 U.S.C. § 2241 petition in the district court raising a host of claims about her disciplinary proceedings and the Bureau of Prisons' disciplinary rules. The district court dismissed her petition after concluding that she failed to exhaust her administrative remedies and, alternatively, that she was not entitled to habeas relief. This is Blevins' pro se appeal.

We reverse and remand because the district court did not follow the two-step process that this Court set out in Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008), for deciding whether to dismiss a petition based on administrative exhaustion, and because the district court did not address the merits of the claims that Blevins actually asserted in her petition.

## I.

Blevins is serving a 152-month sentence in federal prison for various drug and firearms crimes. While in custody she sent an "Inmate Request to Staff" to the prison mailroom. The request, which was addressed to "Dumb bitch C. Robert," said:

> Dumb ass cracker bitch I am built to last. Old washed out hag. I am not concerned about that little game you played with my DHO hearing. Bitch you better worry about me using everything you do to show a Federal Court how unconstitutional the Disciplinary System is.

2

You see dumb bitch it has always been my argument that the DHO process is unconstitutionally vague and leaves too much room for bureau interpretation and this dumb shit is just what I am speaking of.

So bitch come again with something better, because I have 7 motherfucking years left dumb white ho and whether I'm in this cell or on the compound you dick suckers can't hold me no longer.

So kiss my big black ass.  I am tired of you dumb ass Tallahassee employees.

Yeah bitch write a shot ho I'm going to use it in support of my mental anguish claim.

You bitches want to be lowdown and use your authority to hurt somebody.  Okay Bitch you hurt me now I'm going to ask a federal judge to make you pay me for this hurt.

With your ugly cheap looking dusty ass.  I'm 45 how old are you?? You look 75!!

She signed the form, "Shondolyn Motherfucking Blevins."

After receiving that message, Officer Roberts filed an incident report charging Blevins with (1) threatening another with harm, (2) behaving in an insolent manner toward a staff member, and (3) using abusive or obscene language.  The incident report was forwarded to a Disciplinary Hearing Officer (DHO) who held a hearing and concluded that Blevins was guilty of being insolent to staff and using abusive language.  The DHO imposed the following sanctions: disallowance of 14 days of good conduct time, forfeiture of 5 days of non-vested good conduct time, 45 days of disciplinary segregation, and a six-month loss of telephone, commissary, and visiting privileges.

3

Blevins appealed the DHO's decision to the Regional Director. She argued that the disciplinary rules and procedures were unconstitutional under the Second, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. The Regional Director rejected her appeal, sending her a notice that stated: "All four pages of your BP-10 form must be legible and worded the same. Photocopies of the form will not be accepted. You may resubmit your appeal in proper form within 10 days of the date of this rejection notice."

Blevins resubmitted her appeal to the Regional Director. She raised the same claims as she had in the first appeal and included a handful of others. Again, the Regional Director rejected her appeal. The rejection notice said the same thing as the first one, including the statement that Blevins could resubmit her appeal in proper form within 10 days. The record shows that although Blevins prepared a third appeal, she did not submit it or take any other action within the prison's administrative process.

Instead Blevins filed a pro se 28 U.S.C. § 2241 petition in the Northern District of Florida.[1] She claimed that: (1) Officer Roberts made false charges against her in the incident report, (2) the DHO failed to comply with the BOP's

---

[1] An inmate may file a 28 U.S.C. § 2241 petition to challenge the execution of her sentence. See Antonelli v. Warden, 542 F.3d 1348, 1352 (11th Cir. 2008). That includes claims relating to prison disciplinary proceedings. See, e.g., Santiago-Lugo v. Warden, 785 F.3d 467, 471 (11th Cir. 2015).

4

disciplinary policy, (3) the loss of good time credits was an excessive sentence outside the disciplinary policy, (4) the DHO was biased and refused to allow her to present a defense, was rude, and had a "closed mind," and (5) the BOP disciplinary rules and regulations were unconstitutionally vague.

The Warden filed a motion to dismiss raising two arguments. First, he asserted that Blevins did not exhaust her administrative remedies because she "failed to refile" her appeal "in accordance with BOP policies." Second, he argued that even if Blevins had exhausted her administrative remedies, she was not entitled to habeas relief because she received all of the process that she was due and because the evidence was sufficient to prove that she committed the charged conduct.

The magistrate judge issued a report recommending that the district court grant the Warden's motion to dismiss for failure to exhaust, and alternatively, deny the petition on the merits. He concluded that Blevins failed to exhaust her administrative remedies because she "failed to resubmit her rejected remedy at the Regional level and failed to pursue any remedies . . . at the Central Office level." And he concluded in the alternative that Blevins was not entitled to habeas relief because she was "afforded due process and evidence supports [her] conviction." Over Blevins' objection, the district court accepted and adopted the magistrate judge's report and recommendation as its own opinion, granted the Warden's

5

motion to dismiss for failure to exhaust and, alternatively, denied the § 2241 petition on the merits.  This is Blevins' pro se appeal.[2]

## II.

We review de novo a district court's dismissal for failure to exhaust administrative remedies.  Alexander v. Hawk, 159 F.3d 1321, 1323 (11th Cir. 1998).  We also review de novo a district court's denial of a § 2241 petition on the merits.  Santiago-Lugo, 785 F.3d at 471.

"Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

## III.

## A.

An inmate must exhaust available administrative remedies before seeking relief in a § 2241 proceeding.  See Santiago-Lugo, 785 F.3d at 474–75.  To satisfy the administrative exhaustion requirement, the inmate must use "all steps" that the prison makes available to the inmate, and the inmate must do so "properly."  Woodford v. Ngo, 548 U.S. 81, 90 (2006).  That means the inmate must comply with the prison's deadlines and other procedural rules, including the rules relating

---

[2] Blevins did not need to obtain a certificate of appealability to appeal the district court's order.  See Sawyer v. Holder, 326 F.3d 1363, 1364 n.3 (11th Cir. 2003) ("[A] federal prisoner who proceeds under § 2241 does not need a COA to proceed.").

to the filing of appeals.  See id.; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008).  If an inmate fails to exhaust her administrative remedies and the respondent raises the issue in the district court, the district court may not grant relief on the inmate's petition.  See Santiago-Lugo, 785 F.3d at 475.

There is one important exception to the administrative exhaustion requirement.  Although an inmate "must exhaust available remedies," she "need not exhaust unavailable ones."  Ross v. Blake, 136 S. Ct. 1850, 1858 (2016).  An administrative remedy is unavailable if it cannot capably be used to obtain some relief.  Id. at 1859.  The Supreme Court has explained that at least three scenarios meet that criteria: (1) where "despite what regulations or guidance materials may promise," the administrative process "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) where the administrative process is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it," and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  Id. at 1859–60.[3]

---

[3] Although the unavailability exception stems from Prison Litigation Reform Act cases, this circuit has applied that exception to cases involving § 2241 petitions — as have other circuits.  See Boz v. United States, 248 F.3d 1299, 1300 (11th Cir. 2001) (explaining in an immigrant's § 2241 case that "a petitioner need not exhaust his administrative remedies where the administrative remedy will not provide relief commensurate with the claim"); see also, Gallegos-Hernandez v. United States, 688 F.3d 190, 194 (5th Cir. 2012) (per curiam) (noting in a

When a respondent files a motion to dismiss based on an inmate's failure to exhaust administrative remedies, and the inmate claims that her failure should be excused because the administrative remedy process was unavailable to her, the district court must follow a two-step process when ruling on the motion. Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). First the district court must look to the inmate's and respondent's factual allegations, and if they conflict, take the inmate's version of the facts as true. Id. If, in that light, the district court concludes that the inmate failed to exhaust, the petition "must be dismissed." Id. But if the district court, after assuming that the inmate's allegations are true, concludes that the petition is not subject to dismissal, it must proceed to the second step and "make specific findings in order to resolve the disputed factual issues related to exhaustion." Id. And at that second step, the respondent bears the burden of proving that the inmate has failed to exhaust all available administrative remedies. Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083.

---

§ 2241 case that "[e]xceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought"); Garza v. Davis, 596 F.3d 1198, 1203 (10th Cir. 2010) ("The exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief, although we recognize that the statute itself does not expressly contain such a requirement.") (emphasis added); Fazzini v. Northeast Ohio Corr. Ctr., 473 F.3d 229, 233 (6th Cir. 2006) (noting that it is "well-settled that a federal prisoner must exhaust all available administrative remedies before filing a federal habeas petition) (emphasis added).

8

B.

Because Blevins is a federal prisoner, the BOP's Administrative Remedy Program procedural rules apply to her.  28 C.F.R. § 542.10(b); see also United States v. Lucas, 898 F.2d 1554, 1556 (11th Cir. 1990) (explaining that the BOP regulations "set out the procedures that prisoners must pursue prior to seeking relief in a district court").

Those rules state that if an inmate is not satisfied with the result of her DHO hearing, she may submit an appeal to the Regional Director within 20 calendar days.  28 C.F.R. §§ 542.14(d)(2), 542.15(a).  If the inmate's appeal meets the requirements set out in the rules, the Regional Director will accept the appeal and review the merits.  See id. § 542.17(a).  If the appeal does not meet the requirements, the Regional Director may reject and return it to the inmate.  Id.

If the Regional Director rejects the inmate's appeal, he must provide a written notice explaining why.  Id. § 542.17(b).  And if the defect the Regional Director identified can be corrected, that notice must set out a timeframe during which the inmate may correct the deficiency and resubmit her appeal.  Id.  If the Regional Director does not give the inmate an opportunity to correct the defect and resubmit, the inmate may appeal the Regional Director's rejection to the General Counsel.  Id. § 542.17(c).  The General Counsel may affirm the rejection, direct the Regional Director to accept the appeal, or accept the appeal for filing himself.  Id.

9

Once the appeal is properly filed with the Regional Director (either upon the inmate's initial submission, the inmate's resubmission, or at the direction of the General Counsel), the Regional Director has 30 calendar days to respond in writing. Id. § 542.18. If the inmate is not satisfied with the Regional Director's response, she may submit an appeal to the General Counsel within 30 days. Id. § 542.15(a). An appeal to the General Counsel is the "final administrative appeal." Id.

The district court concluded that Blevins failed to comply with those rules. According to the court, Blevins had two options after the Regional Director rejected her appeal as illegible for the second time: (1) she could have corrected the deficiency and resubmitted it to the Regional Director, or (2) she could have appealed the Regional Director's rejection to the General Counsel. And because she did neither, the court held that she failed to exhaust her administrative remedies.

The district court is incorrect about what it characterized as the second option. The BOP regulations state that an inmate may appeal the Regional Director's rejection of her appeal (as opposed to another type of response to it) if "the inmate is not given an opportunity to correct the defect and resubmit." 28 C.F.R. § 542.17(c) ("When a Request or Appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the

10

rejection . . . to the next appeal level.") (emphasis added). But here the Regional Director did give Blevins the opportunity to correct the defect and resubmit the appeal. So contrary to the district court's conclusion, Blevins could not have appealed the Regional Director's rejection of her appeal to the General Counsel. That leaves as her only option submitting her appeal, for a third time, to the Regional Director.

C.

Blevins concedes that she did not submit her appeal for a third time to the Regional Director, but she maintains that the appeal process had become unavailable to her after the second rejection of her appeal. More specifically, Blevins argues that in light of her allegations about how the appeal process had become unavailable, the district court was required to follow the two-step process we set out in Turner before dismissing her petition. We agree.

Blevins asserted in the district court that the appeal process became unavailable to her for five reasons. First, she claimed that the Regional Director repeatedly and intentionally rejected her appeals for a "frivolous reason." She pointed out that although the Regional Director stated that the appeal was illegible, she used the form and pen that prison staff provided to her, and when she requested a typewriter, the BOP denied her request. She also included in the record a copy of both of her appeals, which show that her handwriting was legible and her

arguments were at least coherent. Second, Blevins claimed that the DHO officer refused to provide her with the required material to appeal her disciplinary sanctions.

Third, Blevins claimed that when an inmate tries to appeal, his or her mail "is stopped." Fourth, Blevins claimed that when she tried to resubmit her appeal after the Regional Director's second rejection, the prison mailroom staff and assistant warden prevented her from doing so. According to Blevins, they "changed [the] policy and procedure" without notifying her, refused to allow her to certify the appeal, refused to date stamp the appeal, and refused to accept her mail. She asserted that she "personally spoke" with the assistant warden about mailing her appeal, "as [she] only had 10 days to resubmit," but the assistant warden "used her position of authority over the mailroom" to cause Blevins to "default in [her] attempt" to appeal. And fifth, Blevins claimed that the BOP's disciplinary rules failed to provide adequate guidance to inmates whose appeals have been repeatedly rejected for illegibility.

The Warden did not address, much less deny, any of those allegations. In his motion to dismiss, the entirety of the discussion about Blevins' failure to exhaust consisted of these three brief sentences: "In this instance, Petitioner has not exhausted her administrative remedies regarding her claims. As stated above, Petitioner filed two (2) remedy submissions regarding the discipline hearing

12

process and sanctions for Incident Report No. 2897384.  Both were rejected, and the Petitioner failed to refile them in accordance with BOP Policies."  (Citations omitted.)  Nor did the Warden offer anything more on the subject in his brief to this Court.  Instead, he copied the same three sentences (nearly verbatim) and left it at that.

The district court did not mention Blevins' second, third, fourth, or fifth asserted reasons why the appeals process was unavailable to her.  And it rejected the first asserted reason, without any citations to the record or explanation other than describing it as a "conclusional assertion" that was insufficient to trigger the unavailability exception.

The district court's treatment of Blevins' asserted reasons did not comply with Turner.  Under that decision the district court was first required to accept each of Blevins' allegations as true and decide whether the Warden was nevertheless entitled to dismissal based on administrative exhaustion.  541 F.3d at 1082.  We cannot say that, if the district court had done that, the only reasonable conclusion would have been that the claims should have been dismissed on exhaustion grounds.

Blevins' allegations fall into all three categories the Supreme Court identified as triggering the unavailability exception.  If, as Blevins alleges, the Regional Director rejected her appeal as illegible even though it was legible, and

13

Blevins' only option was to file the same appeal over and over again with that same Regional Director, the BOP's administrative process was "operat[ing] as a simple dead end." Ross, 136 S. Ct. at 1859.  Or if, as Blevins alleges, the DHO officer refused to provide her with the required material to appeal her disciplinary sanctions, the prison staff stops inmates' mail when they try to appeal, and the assistant warden suddenly changed the mail rules and otherwise used her power over the mailroom to prevent Blevins from sending her appeal to the Regional Director, prison administrators "thwart[ed]" Blevins from taking advantage of the appeal process "through machination, misrepresentation, or intimidation." Id. at 1860.  Or if, as Blevins alleges, the BOP rules do not inform inmates about what to do if their appeal is repeatedly rejected for being illegible, the administrative process was "so opaque that it be[came], practically speaking, incapable of use," then even though  "some mechanism" existed to provide relief, "no ordinary prisoner" could "discern or navigate it." Id. at 1859.

Given that the Warden was not entitled to dismissal at step one, the district court should have proceeded to make "specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082.  Then the district court could have used those findings to resolve the legal question about whether the BOP rules adequately informed Blevins about what to do after the Regional Director rejected her appeal as illegible for a second time.  The court did

14

not hold an evidentiary hearing, call for additional discovery, or cite to anything in the Warden's motion or the record to explain why Blevins' allegations were untrue.  Nor did it say that even if Blevins' allegations were true, they would not deter a reasonable inmate from resubmitting an appeal to the Regional Director.

Given these circumstances, the proper course is to reverse and remand so the district court can make the necessary findings related to exhaustion of administrative remedies.  See Whatley v. Warden, 802 F.3d 1205, 1213 (11th Cir. 2015) (reversing and remanding under similar circumstances so the district court could "properly undertake the two-step Turner process"); Turner, 541 F.3d at 1086 (remanding where there remained "disputed factual issues that may affect determination of whether the remedy of appealing the unfavorable response, or lack of any response, to [the inmate]'s formal grievance was available to him"); see also Ross, 136 S. Ct. at 1862 (remanding for further consideration of whether the inmate had "available remedies to exhaust" because the materials the Court had seen were "not conclusive," may not have represented "the complete universe of relevant documents," and had not been fully "analyzed in the courts below") (quotation marks omitted).

## IV.

We note that in § 2241 cases, administrative exhaustion is not a jurisdictional requirement.  See Santiago, 785 F.3d at 474–75.  "Of course, that

does not mean that courts may disregard a failure to exhaust and grant relief on the merits if the respondent properly asserts the defense." Id. at 475.  But it does mean that a court "may skip over the exhaustion issue if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching the exhaustion question." Id.  As a result, if the district court had addressed Blevins' claims on the merits and concluded that they should be denied, that conclusion would provide a basis for affirming the district court's order in this case despite the court's failure to properly apply the Turner test.

The district court did not reach and decide any of Blevins' five claims on the merits, and neither will we.

**REVERSED AND REMANDED.**