[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10771

Non-Argument Calendar

_____

COLEMAN WARNOCK,

Petitioner-Appellant,

versus

WARDEN, FCI RAY BROOK,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

D.C. Docket No. 1:21-cv-03002-AT

_____

Before JORDAN, BRANCH, and MARCUS, Circuit Judges.

PER CURIAM:

Coleman Warnock, a federal prisoner proceeding *pro se*, appeals from the district court's denial of his 28 U.S.C. § 2241 petition, which challenged a prison disciplinary proceeding that resulted in his loss of good-time credit. Because, however, the record in this case does not provide us with an opportunity to meaningfully review the issues on appeal, we vacate and remand for the district court to develop the record more fully.

## I.

The relevant background is this. Warnock is serving a 180-month sentence for conspiracy to possess with intent to manufacture and distribute phencyclidine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(c)(2). On December 12, 2020, Officer M. Pierce accused Warnock of possessing a cellphone in violation of prison rules and initiated disciplinary proceedings. Warnock's hearing notice listed his charges as: "possessing a hazardous tool/refusing to obey an order," corresponding to prison code violation numbers 108 and 307, respectively. An incident report described the conduct giving rise to Warnock's charges, including what the officer saw Warnock do and how Warnock responded to his orders. At the hearing, the Discipline Hearing Officer ("DHO") found insufficient evidence that Warnock had possessed a

cellphone on December 12 in violation of code number 108. Instead, the DHO found that Warnock had committed the prohibited acts of "Destroying and/or disposing of any item during a search, code 115" and "Refusing to obey an order of any staff member, code 307." The DHO sanctioned him with, among other things, the loss of 54 days of good-time credit.

Warnock brought the instant suit under § 2241 to challenge the DHO's decision. Relevant here, Warnock argued that: (1) he tried to exhaust his administrative remedies after the hearing, but prison officials conspired to prevent him from meeting the necessary deadlines to do so; (2) he did not receive adequate notice of the hearing and the charges against him because, as he told officials at the time, he was not given the incident report 24 hours before the hearing; (3) he was improperly denied the services of a staff representative at the hearing, which he needed to help him present potentially exculpatory security camera footage; and (4) no evidence at the hearing indicated that he had destroyed an item during a search or disobeyed an order, especially since the DHO found insufficient evidence that he had wrongfully possessed a cellphone, it made no sense to punish him for destroying a phone he never had, and he was not charged with destroying an item during a search.

A magistrate judge issued a Report and Recommendation ("R&R") determining that Warnock had failed to exhaust his administrative remedies and that his claims also failed on the merits. After Warnock lodged objections to the R&R, the district

court issued an order disposing of the case.  The court first found that Warnock had made a "colorable argument" that he made a diligent effort to exhaust his administrative remedies but still failed to do so, through no fault of his own.  Nevertheless, the court went on to hold that Warnock's DHO hearing was constitutionally adequate.  It found that Warnock was given sufficient notice of the hearing, even if he did not receive a copy of the incident report, when he received a hearing notice and a notice of inmate rights before the hearing.  The district court also found that, assuming Warnock had requested a staff representative for the hearing, he was not entitled to one because he was not illiterate and the issues were not particularly complex; however, the district court did not address whether he was entitled to a representative to help with the video surveillance footage.  Finally, it found that Officer Pierce's report that he saw Warnock with a cellphone, which the DHO deemed more credible than Warnock's statements, established "some evidence" of the code violations for which he was sanctioned.

This timely appeal follows.

## II.

Challenges to the execution of a sentence, rather than the validity of the sentence itself, are properly brought under § 2241. *Antonelli v. Warden*, 542 F.3d 1348, 1352 (11th Cir. 2008).  This includes relief from sanctions received as a result of prison disciplinary proceedings.  *See Santiago-Lugo v. Warden*, 785 F.3d 467, 469, 475–76 (11th Cir. 2015).  When reviewing the denial of a

§ 2241 habeas petition, we review *de novo* questions of law and for clear error factual findings. *Andrews v. Warden*, 958 F.3d 1072, 1076 (11th Cir. 2020). We review *de novo* whether relief is available under § 2241. *Dohrmann v. United States,* 442 F.3d 1279, 1280 (11th Cir. 2006).

This Court has long held that the district court should give a sufficient explanation of its rulings so as to allow us an opportunity to engage in meaningful appellate review. *See Danley v. Allen*, 480 F.3d 1090, 1091 (11th Cir. 2007); *see also Clay v. Equifax, Inc.*, 762 F.2d 952, 957–58 (11th Cir. 1985) (collecting cases "urg[ing] the district court to state the reason for its decision and the underlying predicate"). In doing so, we've stressed that it is the "responsibility of the district court in the first instance" to review the record and the applicable caselaw. *Danley*, 480 F.3d at 1092. Moreover, we've vacated for additional reasoning when the district court did not make necessary factual findings or explain its legal conclusions. *See, e.g., id.; In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003).

### III.

The Due Process Clause demands that an individual receive due process of law before being deprived of a protected liberty interest. *Whitehorn v. Harrelson*, 758 F.2d 1416, 1420 (11th Cir. 1985). In the prison context, the Supreme Court has held that inmates have a liberty interest in good-time credit, and due process requires that a prisoner receive these protections before his good-time credit is revoked: (1) 24 hours' written notice before a

disciplinary hearing; (2) the opportunity, consistent with institutional safety goals, to call witnesses and present evidence in his defense; (3) help from a fellow inmate or the prison staff, if the inmate is illiterate or if the issue is sufficiently complex; and (4) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 564–66, 570 (1974). In elaborating on the function of the notice requirement, the Supreme Court has explained that it is to "give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Id.* at 564. On this basis, the Court in *Wolff* struck the oral notice procedures that had been used by the Nebraska prison system, in part, because in some instances, the inmate "first receive[d] notice of the actual charges at the time of the hearing." *Id.*

Applying *Wolff*, we've held that the Due Process Clause entitles inmates to notice not only of the disciplinary charges themselves and the dates of the alleged offenses, but also to notice of the facts necessary to defend against the charges. *See Dean-Mitchell v. Reese*, 837 F.3d 1107, 1112, 1113 n.5 (11th Cir. 2016). In *Dean-Mitchell*, we rejected a warden's arguments that an inmate had sufficient information about the charges against him based on a hearing notice -- which identified "only the alleged violations ('Refusing an order of a staff member/Threating another with bodily harm') and the date of the offenses," and lacked any "factual information regarding the incident" -- where it was disputed whether he received the incident report. *Id.*

Since *Wolff*, the Supreme Court has held that the Due Process Clause requires that the record of a disciplinary hearing need only contain "some evidence" supporting the hearing decision, since the "fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Superintendent v. Hill*, 472 U.S. 445, 447, 456 (1985). Determining whether there is "some evidence" in the record to support a disciplinary charge does not "require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence," but merely assessment of whether there is "*any evidence* in the record that could support the conclusion reached by the disciplinary board." *O'Bryant v. Finch*, 637 F.3d 1207, 1213 (11th Cir. 2011) (quoting *Hill*, 472 U.S. at 454–56).

Here, Warnock has raised several due process claims arising out of his prison disciplinary proceedings, but on the record before us, we are unable to conduct meaningful appellate review of these issues. *See Clay*, 762 F.2d at 957–58; *Danley*, 480 F.3d at 1092. As we see it, Warnock's claims all seem to stem from an issue that has not yet been developed in the record -- that is, how he was sanctioned at his disciplinary hearing for a code violation that he was not charged with.

According to the hearing notice found in the record, initially Warnock was charged with "possessing a hazardous tool/refusing to obey an order," pertaining to prison code violation numbers 108 and 307, respectively. However, at the hearing, the DHO made a

written finding, without elaborating, that the officer's statement in the incident report that Warnock had possessed a cellphone on December 12 "did not adequately support the code 108, Possession of a Hazardous Tool." Consequently, the DHO dismissed "[t]he code 108." The DHO found instead that Warnock had "committed the prohibited act[s] of Destroying and/or disposing of any item during a search, code 115, and Refusing to obey an order of any staff member, code 307." The DHO then noted that Warnock was sanctioned with 40 days' loss of good-time credit based on code violation 115 and 14 days' loss of good-time credit based on code violation 307.

From this limited information, we glean that the DHO found that Warnock had destroyed *something* during the incident in question, but we do not know what, nor whether that matters. It also appears that Warnock faced a new charge (code violation 115) at some point during the proceedings, but we do not know when it was added, when he received notice of it, or how the change may have shaped his defense at the hearing. Further, the DHO's notations suggest that the different charges carried different sanctions, but, again, we do not know how the sanctions for his original charges varied from the sanctions he actually received.

In short, the record does not appear to contain important information that would shed light on critical aspects of Warnock's proceedings. Without more, we cannot determine how Warnock's due process rights were affected, if at all. We, therefore, remand for the district court to develop the record more fully on

this issue and any other issues that might inform its due process analysis. *See Danley*, 480 F.3d at 1092; *In re Ford Motor Co.*, 345 F.3d at 1317. We note, moreover, that the district court did not resolve whether Warnock satisfied the exhaustion requirement before bringing suit, and leave it to the district court to determine on remand whether it should do so, in addition to or instead of considering the merits. *See Santiago-Lugo*, 785 F.3d at 475 (recognizing that while a prisoner must exhaust his administrative remedies before seeking relief under § 2241, the district court may skip the issue if it is easier to deny a petition on the merits).[1]

**VACATED AND REMANDED.**

---

[1] On remand, however, the district court need not address Warnock's claim that the BOP's intentional interference with his administrative proceedings constituted an independent violation of his constitutional rights. For one thing, this claim is not cognizable under § 2241; it should be brought under § 1983. *See Antonelli*, 542 F.3d at 1352 (holding that a § 2241 petition challenges the execution of a sentence). Moreover, we are unaware of any precedent holding that due process entitles a prisoner to an administrative appeal process to challenge disciplinary sanctions. *See Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (rejecting an inmate's due process claim based on the BOP's failure to enforce regulations creating prison grievance procedures, since "an inmate has no constitutionally-protected liberty interest in access" to those procedures); *Doe v. Moore*, 410 F.3d 1337, 1350 (11th Cir. 2005) ("State-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory.") (quotations omitted).